# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3688

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellee,　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　　v.　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Northern District of Iowa.
Jorge Osbaldo Aguilera, also known as　*
Victor Alonso Saldana-Lara,　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellant.　　　　*

_____

Submitted: April 16, 2010
Filed: November 17, 2010

_____

Before RILEY, Chief Judge, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Jorge Osbaldo Aguilera was convicted of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The district court[1] denied Aguilera's motions to suppress evidence seized during a traffic stop and for a new trial. At sentencing, the court also denied Aguilera's request for "safety-valve relief,"

_____

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

which would permit a sentence below the statutory minimum term, and sentenced him to 120 months' imprisonment. We affirm.

## I.

On December 5, 2008, law enforcement agents arranged a controlled purchase of methamphetamine from Luis Mata-Gutierrez. Mata-Gutierrez agreed to deliver four ounces of methamphetamine to a confidential informant in Le Mars, Iowa. At Aguilera's trial, Mata-Gutierrez testified that he was in Omaha, Nebraska, with Aguilera and Alfonso Saldana when the confidential informant called him requesting methamphetamine. Mata-Gutierrez explained that Saldana supplied him with drugs to sell, and that Aguilera helped Saldana distribute drugs. He also testified that after the informant placed the order, Saldana retrieved the methamphetamine and Aguilera hid the drugs in a blue GMC Yukon, which was borrowed from Saldana. Aguilera and Mata-Gutierrez then left for Le Mars.

Law enforcement agents recorded a telephone conversation between Mata-Gutierrez and the confidential informant while Aguilera and Mata-Gutierrez were en route to Le Mars. In this conversation, Mata-Gutierrez described his location to the confidential informant, and the informant provided directions to his residence. Knowing that Mata-Gutierrez had used a blue GMC Yukon in the past, law enforcement agents began to search for the vehicle. Iowa State Trooper Jeremy Probasco eventually observed the Yukon, which was driven by Aguilera, and stopped it for not having license plates. Aguilera was arrested for driving without a valid license, and a search of the vehicle uncovered 111.38 grams of methamphetamine.

In a superseding indictment, Aguilera and Mata-Gutierrez were charged with conspiring to distribute 50 grams or more of methamphetamine, and possession with intent to distribute 50 grams or more of methamphetamine. Mata-Gutierrez was also charged with two additional counts of possession with intent to distribute

methamphetamine. Mata-Gutierrez pleaded guilty to all four counts, but Aguilera's case went to trial, and Mata-Gutierrez testified against him.

At trial, Aguilera moved to suppress the evidence obtained in the search of the Yukon, but the district court denied his motion. The case was then submitted to the jury, and after deliberating for less than thirty minutes, the jury returned a guilty verdict on both counts of the indictment. Aguilera filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, and the district court denied the motion.

Before sentencing, Aguilera provided a "safety-valve statement" to the government. This statement was designed to satisfy the requirement of 18 U.S.C. § 3553(f)(5) and USSG § 5C1.2(a)(5) that a defendant must have "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses of conviction that were part of the same course of conduct or of a common scheme or plan." In his statement, Aguilera asserted that he was not involved in using or distributing drugs, and claimed that "[w]hen we were stopped by law enforcement, I did not know there were drugs in the Yukon." He also explained that on December 5, 2008, Mata-Gutierrez had asked him for a ride to George, Iowa, so that Mata-Gutierrez could pay rent. The district court heard arguments from the parties on whether the safety-valve provisions of 18 U.S.C. § 3553(f) and USSG § 5C1.2 applied to Aguilera, but denied relief. The district court then sentenced Aguilera to 120 months' imprisonment.

II.

Aguilera raises three issues on appeal. First, he contends that the district court erred in denying his motion to suppress evidence seized as the result of the search of the Yukon. Aguilera also challenges the district court's denial of his motion for a new

trial based on the sufficiency of the evidence. Finally, Aguilera asserts that the district court erred at sentencing by not granting him safety-valve relief.

## A.

Aguilera asserts that the district court erred in denying his motion to suppress, because the warrantless search of the Yukon was not a valid search incident to arrest under the rule of *Arizona v. Gant*, 129 S. Ct. 1710 (2009), and because Trooper Probasco did not have probable cause to believe that contraband was present in the vehicle. The government does not argue that Aguilera waived this challenge by failing to move to suppress before trial, *cf.* Fed. R. Crim. P. 12(b)(3)(C); *United States v. Blue*, 255 F.3d 609, 612 (8th Cir. 2001), but contends on the merits that *Gant* is inapposite, because Trooper Probasco had probable cause to search the vehicle, and the search was therefore permissible under the automobile exception to the warrant requirement. When reviewing the district court's denial of a motion to suppress, we review the district court's factual findings for clear error, and its conclusions of law *de novo*. *See United States v. McGlothen*, 556 F.3d 698, 701 (8th Cir. 2009).

The Supreme Court has declared that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). Under the automobile exception to the warrant requirement, law enforcement "may search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Cortez-Palomino*, 438 F.3d 910, 913 (8th Cir. 2006). "Probable cause exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (internal quotation omitted).

Trooper Probasco had probable cause to believe that the Yukon contained methamphetamine before he searched the vehicle. Where, as here, officers are working together on an investigation, and there exists some degree of communication between the officers, we "impute the knowledge of one officer to other officers." *United States v. Gillette*, 245 F.3d 1032, 1034 (8th Cir. 2001). Law enforcement officers in this case knew that Mata-Gutierrez distributed methamphetamine, and they had observed a blue GMC Yukon parked near Mata-Gutierrez's residence during an earlier controlled purchased there. The recorded phone call between the confidential informant and Mata-Gutierrez also revealed to law enforcement that Mata-Gutierrez was en route to the informant's residence where he was scheduled to deliver four ounces of methamphetamine.

Based on the information obtained during the investigation of Mata-Gutierrez, law enforcement officers were instructed to watch for Mata-Gutierrez's gold-colored Jeep or a blue GMC Yukon. Once Trooper Probasco observed the Yukon on the route to the informant's residence, and verified that Mata-Gutierrez was a passenger in the vehicle, he had probable cause to believe that the vehicle contained the methamphetamine that was scheduled for delivery. Accordingly, the district court did not err in concluding that the trooper's warrantless search was permissible under the automobile exception, and we need not consider whether the search of the vehicle was a valid search incident to arrest.

B.

Aguilera also asserts that the district court should have granted a new trial pursuant to Federal Rule of Criminal Procedure 33(a), because the evidence introduced at trial was insufficient to support the jury's verdict, and because the jury deliberated for fewer than thirty minutes. We review the district court's denial of a motion for a new trial for an abuse of discretion. *See United States v. Sturdivant*, 513 F.3d 795, 802 (8th Cir. 2008).

Under Rule 33, the court may "grant a new trial if the interest of justice so requires." The district court has broad, but limited, discretion to grant or deny a motion for a new trial based on the sufficiency of the evidence, and "it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (internal quotation omitted). Motions for new trial based on the sufficiency of the evidence are generally disfavored, however, and "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id.*

Aguilera contends that the government relied on Mata-Gutierrez's testimony to prove its case, and that the district court should have determined that this testimony was not credible. Aguilera also offers innocent explanations for some of the evidence against him, and argues that other evidence presented by the government did not establish that he was involved in methamphetamine distribution or that Saldana, the alleged drug supplier, even exists. The district court concluded that Mata-Gutierrez's testimony was not "wholly incredible," and that "the evidence in this case does not weigh so heavily against the verdict that the Court can say with any amount of confidence that a miscarriage of justice may have occurred."

We are satisfied that the district court did not abuse its discretion by concluding that no miscarriage of justice resulted from the jury's verdict. Testimony from Mata-Gutierrez directly implicated Aguilera in a conspiracy to possess and distribute methamphetamine. This testimony, along with the other evidence presented, was sufficient to support the verdict. The district court expressly considered Mata-Gutierrez's credibility, and determined that his "testimony was consistent with the evidence and was at least partially corroborated by the officers who testified at trial." The district court was in a better position to evaluate credibility, and we decline to second-guess the district court's assessment. *See United States v. Gabe*, 237 F.3d 954, 961 (8th Cir. 2001).

Aguilera also contends that the district court erred by failing to consider the jury's brief deliberations as a factor favoring a new trial. On this point, the district court noted that "the Court cannot say that the short period of deliberations shows the jury failed to give the case careful and thoughtful consideration," and concluded that "having fully considered the matter, the Court cannot say that a miscarriage of justice may have occurred."

We agree with other circuits that brief jury deliberation alone is not a sufficient basis for a new trial. "At best, it is a factor to be considered when deciding a motion for new trial, and even then cannot be the only basis for granting a new trial." *United States v. Cunningham*, 108 F.3d 120, 124 (7th Cir. 1997); *see Kearns v. Keystone Shipping Co.*, 863 F.2d 177, 182 (1st Cir. 1988) ("Brief jury deliberation is not, in itself, sufficient basis to support a new trial motion."); *Marx v. Hartford Accident & Indem. Co.*, 321 F.2d 70, 71 (5th Cir. 1963) ("We cannot hold an hour-glass over a jury. If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial."). As discussed, the evidence here did not compel the grant of a new trial. To the extent that the duration of deliberations is relevant at all, this was not a complex case. If the jury credited Mata-Gutierrez's testimony, which directly implicated Aguilera in the charged conduct, then lengthy deliberations were unnecessary. The district court did not abuse its discretion in denying Aguilera's motion for a new trial.

## C.

Aguilera's last argument is that the district court erred by denying him safety-valve relief at sentencing. The safety-valve provisions permit a district court to impose a sentence below the statutory minimum term of imprisonment if, among other requirements, "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C.

§ 3553(f)(5); *see* USSG § 5C1.2(a)(5). The defendant has the burden to prove that he qualifies for this relief, and we review for clear error the district court's findings about the completeness and truthfulness of a defendant's provision of information. *United States v. Soto*, 448 F.3d 993, 995 (8th Cir. 2006).

Aguilera asserts that safety-valve relief may be granted to a defendant who maintains that he is innocent after a jury's guilty verdict, and he argues that the district court failed to apply the correct standard when determining whether he truthfully provided information to the government. Aguilera seems to contend that the district court erred by applying an interpretation of the safety-valve provisions adopted by the Second Circuit in *United States v. Reynoso*, 239 F.3d 143 (2d Cir. 2000), and by failing to recognize that a guilty verdict did not preclude safety-valve relief in this case.

In *Reynoso*, the Second Circuit held that to qualify for safety-valve relief, a defendant must prove "both that information he or she provided to the Government was objectively true and that he or she subjectively believed that such information was true." *Id.* at 150. A dissenting judge disagreed, and concluded that the statute "requires only that the defendant provide information that she believes to be true." *Id.* (Calabresi, J., dissenting). Aguilera asserts that the dissent in *Reynoso* and other cases make clear that a guilty verdict does not preclude safety valve relief for a defendant whose safety-valve statement contradicts the verdict.

We need not take sides in the *Reynoso* debate, because the district court adopted Aguilera's proposed interpretation and did not clearly err in denying safety-valve relief. The district court agreed with Aguilera that safety-valve relief may be granted even when the defendant maintains that he is innocent. And the court did not require Aguilera to prove that his safety-valve statement was objectively true, as required by the majority in *Reynoso*. After discussing *Reynoso*, the district court noted that "the ruling of this Court is not going to be that it has to be that he had to prove it was true."

(S. Tr. 48). The court explained instead that Aguilera "does have to carry the burden of proof to determine – persuade the Court that he has fully and completely revealed everything, and the Court felt that under the circumstances as we've talked about for the last couple of hours that that wasn't done." (S. Tr. 55).

Even accepting for purposes of analysis that a defendant seeking safety-valve relief need provide only that information which he subjectively believes is true, the district court did not clearly err in denying relief to Aguilera. In his safety-valve statement, Aguilera continued to proclaim his innocence, despite the government's proof that he participated in a conspiracy to possess and distribute methamphetamine. The district court simply did not believe that Aguilera was telling the subjective truth as he knew it, and this finding was not clearly erroneous. *See United States v. O'Dell*, 204 F.3d 829, 838 (8th Cir. 2000).

\*　\*　\*

The judgment of the district court is affirmed.

_____