# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-3687

———————

United States of America,

          Plaintiff - Appellee,

    v.

Ignacio Sandoval-Sianuqui,
also known as Nacho,

          Defendant - Appellant.

\* Appeal from the United States
District Court for the
District of Nebraska.

———————

Submitted:  November 19, 2010
Filed: February 15, 2011

———————

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

———————

MELLOY, Circuit Judge.

Ignacio Sandoval-Sianuqui pleaded guilty to conspiring to distribute and possessing with the intent to distribute 500 grams or more of a substance containing methamphetamine.  The district court[1] sentenced Sandoval-Sianuqui to 292 months' imprisonment.  Sandoval-Sianuqui appeals his sentence.  He argues that the district court erred in finding that he obstructed justice, erred in finding him ineligible for

---

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

safety-valve relief, committed procedural error in sentencing him, and imposed a substantively unreasonable sentence. We affirm.

## I. Background

From roughly September 2007 until early July 2008, Sandoval-Sianuqui participated in a conspiracy to distribute methamphetamine. Sandoval-Sianuqui resided in Phoenix, Arizona, but the conspiracy involved distributing methamphetamine to Kansas and Nebraska.

Luis Mendoza-Ramirez and Jose Antonio Duran were part of the conspiracy. Mendoza-Ramirez twice traveled to Phoenix from his residence in Nebraska to purchase a pound or two of methamphetamine from Sandoval-Sianuqui in 2007. Mendoza-Ramirez then resold these drugs in Nebraska. After these initial trips, however, Mendoza-Ramirez no longer made the trips to Arizona himself. Instead, he arranged with Sandoval-Sianuqui to have Duran act as a transporter. Pursuant to this arrangement, Sandoval-Sianuqui provided Duran with methamphetamine in Arizona, Duran transported the drugs to Mendoza-Ramirez in Nebraska and to Mendoza-Ramirez's cousin in Kansas, and then Duran received the purchase money from Mendoza-Ramirez and his cousin and returned it to Sandoval-Sianuqui in Arizona.

Duran made numerous trips pursuant to this arrangement. Sandoval-Sianuqui charged Mendoza-Ramirez and his cousin roughly $18,500 per pound of methamphetamine, and Mendoza-Ramirez and his cousin paid Duran roughly $1,000 for each pound that Duran transported. Sandoval-Sianuqui agrees that this scheme involved at least fifteen kilograms of methamphetamine.

In February 2008, the government arrested Mendoza-Ramirez and Duran and charged them with drug-distribution offenses. Both men signed plea agreements and participated in proffer interviews where they provided the government with details

regarding the drug-distribution conspiracy, including information concerning Sandoval-Sianuqui's role in the conspiracy.

On August 20, 2008, a grand jury indicted Sandoval-Sianuqui for conspiring to distribute and possessing with the intent to distribute 500 or more grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), and 846. On September 5, law enforcement arrested Sandoval-Sianuqui in Arizona and transported him to Nebraska. He ultimately entered a guilty plea on June 18, 2009.

The district court sentenced Sandoval-Sianuqui on November 17, 2009. The court found that the base offense level for the conspiracy charge was thirty-eight. The court imposed a two-level enhancement after finding that Sandoval-Sianuqui had obstructed justice. The court did not grant an offense-level reduction for acceptance of responsibility. Although Sandoval-Sianuqui had a criminal-history category I, the court found that Sandoval-Sianuqui was ineligible for safety-valve relief because he had obstructed justice. Sandoval-Sianuqui's advisory guideline sentencing range was 292 to 365 months. The district court denied Sandoval-Sianuqui's motion to vary downward from the range and imposed a sentence of 292 months.

Sandoval-Sianuqui raises four issues on appeal. First, he argues that the district court erred by finding that he obstructed justice. Second, he argues that the district court erred by finding that he was ineligible for safety-valve relief. Third, he argues that the district court committed procedural error by failing to adequately consider the sentencing factors of 18 U.S.C. § 3553(a). Finally, he argues that the district court's denial of his downward-variance motion resulted in the imposition of a substantively unreasonable sentence.

## II. Discussion

### A.

Sandoval-Sianuqui first argues that the district court erred by finding that he obstructed justice. Section 3C1.1 of the Sentencing Guidelines provides that a two-level increase in a base offense level is appropriate if:

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . . .

U.S.S.G. § 3C1.1; see also United States v. Jones, 612 F.3d 1040, 1046 (8th Cir. 2010). This adjustment applies to "threatening, intimidating, or otherwise unlawfully influencing a co-defendant [or] witness . . . directly or indirectly, or attempting to do so." See U.S.S.G. § 3C1.1 cmt. n.4 (listing examples). "We review the sentencing court's factual findings regarding obstruction of justice . . . for clear error." Jones, 612 F.3d at 1046.

At Sandoval-Sianuqui's sentencing hearing, Duran testified that Sandoval-Sianuqui both threatened and assaulted him while the two were in prison together.[2]

---

[2] Duran and Mendoza-Ramirez testified that Sandoval-Sianuqui threatened them and their families on numerous occasions while the three were in prison. Mendoza-Ramirez testified that beginning in March or April of 2009, Sandoval-Sianuqui repeatedly called him a traitor and said that he "would pay" for cooperating with the government. Mendoza-Ramirez believed these threats meant that Sandoval-Sianuqui was either going to have him or one of his family members killed. Duran testified that in mid-June 2009, Sandoval-Sianuqui claimed to have acquired the home addresses for Duran's and Mendoza-Ramirez's families and threatened to use the

Duran testified that in April of 2009, he was sitting on a bench in the booking area of a prison waiting to be admitted. Then, a line of inmates entered and began walking across the room. Duran testified that Sandoval-Sianuqui was part of the line, and as he passed Duran, he stepped out of the line, slapped Duran, and said in Spanish that Duran was a "traitor" and that he would "lose out or be killed." A security guard testified at the sentencing hearing that he heard a "smacking noise" but did not see Sandoval-Sianuqui strike Duran. However, the guard reviewed a video recording to confirm that the slap occurred. The guard also testified that he heard Sandoval-Sianuqui say something to Duran near the time of the slap, but since he did not speak Spanish, he could not confirm that Sandoval-Sianuqui had threatened Duran.

On the basis of this testimony, the district court found that Sandoval-Sianuqui had assaulted and threatened Duran "in an effort to either shut [him] up or to punish him for cooperating." We have indicated that a two-level increase pursuant to section 3C1.1 is appropriate if a defendant harms or threatens to harm a witness, regardless of whether the defendant's motive is to "shut up" or "punish" the witness. United States v. Wahlstrom, 588 F.3d 538, 545 (8th Cir. 2009); United States v. Johnson, 978 F. Supp. 1305, 1309 (D. Neb. 1997) (imposing obstruction-of-justice enhancements after finding that the defendants attempted to harm a witness to either "silence or punish him"), aff'd, United States v. Valdez, 146 F.3d 547, 555 (8th Cir. 1998) (holding that the district court's findings were "sufficient as a matter of law" to warrant the obstruction-of-justice enhancements). Nonetheless, Sandoval-Sianuqui argues that the district court's finding in this case is clearly erroneous because Duran was not credible. Specifically, Sandoval-Sianuqui argues that Duran was not credible because (1) the guard who witnessed Sandoval-Sianuqui's slap of Duran testified that Sandoval-Sianuqui only slapped Duran once, whereas Duran testified that he was

_____

addresses to find and kill their families. Duran testified that near this time, his wife said that armed individuals had come to her house and had "roughed her up." Mendoza-Ramirez testified that, also near this time, a woman with the same name as his wife who lived in the same "small town" in Mexico was murdered.

slapped on "both sides" of his face, which implies Duran testified he was slapped twice, and (2) the guard could not corroborate Duran's allegation that Sandoval-Sianuqui had threatened Duran after slapping him because the guard could not speak Spanish.

Sandoval-Sianuqui's arguments are without merit. First, it is undisputed that both the guard and Duran testified that Sandoval-Sianuqui assaulted Duran. Further, "'[a] district court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility.'" Wahlstrom, 588 F.3d at 542 (quoting United States v. Killingsworth, 413 F.3d 760, 763 (8th Cir. 2005)). The court was free to believe Duran's testimony that Sandoval-Sianuqui threatened him regardless of whether the guard sufficiently understood Spanish to corroborate what Sandoval-Sianuqui said to Duran. Therefore, the court's factual findings were not clearly erroneous, and they justified imposition of a two-level increase for obstruction of justice.

B.

Next, Sandoval-Sianuqui argues that the district court erred in finding that he was ineligible for safety-valve relief. If a defendant is eligible for safety-valve relief, a district court may impose a sentence below the statutory minimum term of imprisonment. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. A defendant is eligible for safety-valve relief if he meets certain conditions, including not having used "violence or credible threats of violence . . . in connection with the offense." § 5C1.2(a)(2). The defendant bears the burden of proving his eligibility for this relief. United States v. Aguilera, 625 F.3d 482, 488 (8th Cir. 2010). "We review the district court's application of § 5C1.2 de novo and its factual findings for clear error." United States v. Jackson, 552 F.3d 908, 909 (8th Cir. 2009).

-6-

The district court found that Sandoval-Sianuqui's assault on and threat toward Duran made Sandoval-Sianuqui ineligible for safety-valve relief. We agree. To be eligible for safety-valve relief, the defendant must not have used "violence or credible threats of violence" while "attempting to avoid detection or responsibility" for the offense of conviction. § 3553(f)(2); §§ 5C1.2(a)(2), 5C1.2 cmt. n.3, 1B1.3. In imposing the obstruction-of-justice enhancement, the court necessarily found that by assaulting and threatening Duran, Sandoval-Sianuqui "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." § 3C1.1. If a defendant assaults and threatens a cooperating witness for the purpose of obstructing or impeding the investigation, prosecution, or sentencing of his offense of conviction, it follows that the defendant has used violence or credible threats of violence for the purpose of attempting to avoid detection or responsibility for the offense of conviction. Thus, the court did not err in finding that Sandoval-Sianuqui was ineligible for safety-valve relief.[3]

_____

[3] The district court also found that Sandoval-Sianuqui was ineligible for safety-valve relief because he did not prove that he provided the government with complete and true information regarding who all of his buyers were, who all of his suppliers were, and where the money went that he had received from his drug dealing. Pursuant to § 5C1.2(a)(5), a defendant is ineligible for safety-valve relief if he cannot prove that he has "truthfully provided to the Government all information and evidence [that he] has concerning [his] offense or offenses that were part of the same course of conduct or of a common scheme or plan." Our finding that the district court did not err in concluding that Sandoval-Sianuqui was ineligible for safety-valve relief because of his assault on and threat toward Duran, however, makes it unnecessary for us to consider whether Sandoval-Sianuqui failed to prove his eligibility for safety-valve relief pursuant to § 5C1.2(a)(5).

## C.

Third, Sandoval-Sianuqui argues that the district court committed procedural error in sentencing him by failing to adequately consider the disparity between his sentence and the sentences that Mendoza-Ramirez and Duran received.

If a sentencing court fails to consider the factors enumerated in § 3553(a), the court commits "procedural error." Gall v. United States, 552 U.S. 38, 51 (2007). So long as it is clear from the record that the district court "actually considered the § 3553(a) factors in determining the sentence," however, we generally find that the court has committed no procedural error. United States v. Walking Eagle, 553 F.3d 654, 659 (8th Cir. 2009). Among the § 3553(a) factors that a sentencing court must consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). Thus, judges must consider sentencing disparities among defendants who are "similarly situated" to each other. United States v. Williams, 624 F.3d 889, 897 (8th Cir. 2010); United States v. Brunken, 581 F.3d 635, 638 (8th Cir. 2009).

In this case, Duran, Mendoza-Ramirez, and Sandoval-Sianuqui faced roughly similar charges, they were responsible for roughly the same amounts of methamphetamine, and they all pleaded guilty. Nonetheless, Sandoval-Sianuqui received a 292-month sentence while Duran received a sentence of 96 months and Mendoza-Ramirez received a sentence of 108 months. We find no infirmity in the district court's consideration of § 3553(a)(6), however, because the three defendants were not similarly situated. Sandoval-Sianuqui committed obstruction of justice (Duran and Mendoza-Ramirez did not), he was ineligible for safety-valve relief (Duran and Mendoza-Ramirez received such relief), and he did not accept responsibility for his criminal activity (Duran and Mendoza-Ramirez did accept responsibility). Williams, 624 F.3d at 897. Moreover, even though the defendants were not similarly situated, the sentencing transcript clearly demonstrates that,

contrary to Sandoval-Sianuqui's argument, the district court understood that it had the authority to vary downward from the advisory sentencing guidelines range and thoroughly considered, but rejected, Sandoval-Sianuqui's motion to do so based upon the sentence disparities among the three defendants. Therefore, the district court's consideration of § 3553(a)(6) did not constitute procedural error.

## D.

Finally, Sandoval-Sianuqui argues that by rejecting his downward-variance motion, the district court imposed a substantively unreasonable sentence. We apply an abuse-of-discretion standard to review the substantive reasonableness of a sentence. United States v. Hoffman, 626 F.3d 993, 998 (8th Cir. 2010).

We reject Sandoval-Sianuqui's argument that the disparity between the length of his sentence and the lengths of Duran's and Mendoza-Ramirez's sentences renders his sentence substantively unreasonable. First, the district court imposed a sentence within the advisory guideline sentencing range, and we presume such sentences are reasonable. United States v. Heath, 624 F.3d 884, 888 (8th Cir. 2010). Moreover, as we noted before, Sandoval-Sianuqui is not "similarly situated" to Duran and Mendoza-Ramirez, and we have indicated that disparate sentences between dissimilarly situated defendants is generally not a proper basis for concluding that a sentence is substantively unreasonable. See Brunken, 581 F.3d at 638; see also United States v. Watson, 480 F.3d 1175, 1177–78 (8th Cir. 2007) (suggesting that "legitimate distinctions" between defendants due to properly imposed offense-level enhancements and reductions indicates that the defendant who received the longer sentence did not receive a substantively unreasonable one). Finally, the district court explicitly considered the § 3553(a) factors at the sentencing hearing, and we "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify" the sentence. Gall, 552 U.S. at 51; see also United States v. Davis, 583 F.3d 1081, 1099

(8th Cir. 2009). Therefore, we reject Sandoval-Sianuqui's argument that his sentence was substantively unreasonable.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____