# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1169

_____

United States of America

*Plaintiff - Appellee*

v.

Jacob William Brisbin

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: February 8, 2016
Filed: September 1, 2016
[Unpublished]

_____

Before SMITH, MELLOY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Defendant Jacob Brisbin pleaded guilty to conspiring to manufacture and distribute methamphetamine by a drug felon. The district court[1] sentenced Brisbin to 420 months in prison. Brisbin appeals, arguing the district court erred in applying a

_____

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

sentencing adjustment for obstruction of justice and denying a reduction for acceptance of responsibility. Brisbin also argues the district court erred when it proposed an alternate sentence. We affirm.

## I. Background

A grand jury indicted Brisbin on two counts, including conspiring to manufacture and distribute methamphetamine by a drug felon in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851, and manufacturing and attempted manufacturing of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, and 851. Pursuant to a plea agreement, Brisbin pleaded guilty to Count I, conspiracy to manufacture and distribute methamphetamine by a drug felon.

While Brisbin was detained on the instant charges, he engaged in several activities with the apparent intent to publicize the identities of the government's witnesses and cooperators. First, on August 28, 2014, someone posted the names of several witnesses and cooperators on Brisbin's brother's Facebook page.[2] Next, while Brisbin was being held at the Linn County Jail, law enforcement intercepted a note Brisbin had written to another inmate. The note contained an aggressive message to the inmate, who appeared to have cooperated with the government in the case against Brisbin.[3] Finally, on December 3, 2014, Brisbin made a recorded phone call to his mother. This phone call took place after Brisbin pleaded guilty (October 6, 2014) and

_____

[2] Brisbin's brother, Tyler Brisbin, was also incarcerated at the time of the Facebook post. Neither brother had access to the Facebook account when information was posted. The district court did not rely on this conduct in applying the obstruction of justice enhancement.

[3] The note read: "Bro that f**ked up my lawyer is bring up your statement your just like [name omitted] I thought you were a friend. No I see your just like ever one else. You want to tell people I jump on your case you might want to get the info right. You're a bitch and a rat. I send the paper over there"

after the probation office prepared the initial draft of his Presentence Investigation Report ("PSR") (November 26, 2014). Brisbin and his mother discussed his PSR and Brisbin stated, "I'm going to get another copy of [the PSR] and I'm going to send it out and put it all over my f**king Facebook." Brisbin's mother seemed to agree that if Brisbin gave her a copy of the PSR, she would "flash it all over the f**king computer." After law enforcement listened to this call, a magistrate judge ordered that Brisbin surrender his copy of the PSR. Brisbin's attorney obtained Brisbin's copy of the PSR on December 5, 2014, and Brisbin did not send a copy of the document out of the jail.

According to the PSR, the parties agreed that Brisbin's minimum offense level would be thirty-four based on the amount of methamphetamine he had manufactured or distributed. The base offense level increased by two levels for use of a gun. The parties also stipulated to a two-level enhancement because Brisbin was an organizer or leader of his drug manufacturing organization. The Probation Officer recommended that Brisbin receive credit for accepting responsibility and that he receive no enhancement for obstruction of justice. This would have resulted in an offense level of thirty-five and criminal history category VI, with a sentencing guidelines range of 292 to 365 months. The government objected to the failure to increase the offense level for obstruction of justice.

At sentencing, the government presented evidence as to Brisbin's actions while in jail. Ultimately, the district court determined that Brisbin's recorded telephone conversation with his mother about posting his PSR on the internet constituted a substantial step toward obstructing justice by intimidating, unlawfully influencing, or retaliating against government witnesses. The district court noted that Brisbin's note to a fellow cooperating inmate also provided a basis for obstruction of justice. As a result of Brisbin's obstructive behavior, the district court concluded that Brisbin was not entitled to receive credit for acceptance of responsibility. Based on a total offense level of forty and a criminal history category VI, the district court determined

Brisbin's guideline sentencing range was 360 months to life in prison. Rejecting Brisbin's motion for a downward variance, the district court sentenced Brisbin to 420 months in prison. The district court also imposed 420 months as an alternate sentence identifying the objection to the obstruction of justice enhancement and considering the 18 U.S.C. § 3553(a) factors. Brisbin appeals.

## II. Discussion

### A. Obstruction of Justice Enhancement

Brisbin argues the district court erred in applying the obstruction of justice enhancement based on the recorded phone call to his mother and the written note to another inmate. We review "a district court's factual findings underlying an obstruction of justice enhancement for clear error and its construction and application of the guidelines de novo." United States v. Mohamed, 757 F.3d 757, 761 (8th Cir. 2014) (quoting United States v. Mabie, 663 F.3d 322, 334 (8th Cir. 2011)). "Clear error exists when the court is left 'with the definite and firm conviction that a mistake has been committed.'" United States v. Adetiloye, 716 F.3d 1030, 1036 (8th Cir. 2013) (quoting United States v. Lalley, 257 F.3d 751, 758 (8th Cir. 2001)).

The two-level adjustment for Obstructing or Impeding the Administration of Justice applies "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction." U.S.S.G. § 3C1.1.

Brisbin challenges the district court's application of § 3C1.1 in four ways: (1) the evidence does not show Brisbin's conduct rose to the level of an attempt; (2) there is no evidence to prove a nexus between his allegedly obstructive conduct and his pending sentencing hearing; (3) even if Brisbin took a substantial step toward

posting his PSR on the internet, this conduct does not constitute obstruction of justice; and (4) Brisbin's note to a cooperating inmate was motivated by anger, not the desire to influence testimony or intimidate the inmate. Considering each of Brisbin's arguments in turn, we conclude that the district court properly applied the obstruction of justice enhancement.

First, Brisbin argues that his conduct did not constitute an attempt to obstruct justice. As the language of § 3C1.1 suggests, "[a]n attempt to intimidate or threaten a witness, even if unsuccessful, is sufficient to sustain a two-level enhancement for obstruction of justice." United States v. Vaca, 289 F.3d 1046, 1049 (8th Cir. 2002) (citations omitted). "An attempt requires (1) an intent to engage in criminal conduct, and (2) conduct constituting a substantial step toward the commission of the substantive offense which strongly corroborates the actor's criminal intent." United States v. Smith, 665 F.3d 951, 955 (8th Cir. 2011) (quoting United States v. Wahlstrom, 588 F.3d 538, 543 (8th Cir. 2009)). "A substantial step is one that is 'necessary to the consummation of the crime and . . . of such a nature that a reasonable observer, viewing it in context could conclude that it was undertaken in accordance with a design to commit the substantive offense.'" Id. at 956 (quoting Wahlstrom, 588 F.3d at 543).

In this case, Brisbin's conduct shows that he attempted to obstruct justice. Brisbin stated to his mother, "I'm going to get another copy of [the PSR] and I'm going to send it out and put it all over my f**king Facebook." Brisbin's mother agreed, "Yeah, you can, I can splash it, I'll flash it all over the f**king computer." During the conversation, Brisbin mentioned several government witnesses or cooperators and expressed his desire to harm them. Given the context of Brisbin's statements about putting his PSR on Facebook, it is reasonable to infer that Brisbin intended to intimidate or threaten people named in the document. Further, Brisbin's conduct in recruiting his mother to post his PSR on Facebook constituted a substantial

step toward obstructing justice. As such, we conclude that the district court did not err in finding that Brisbin's conduct constituted an attempt.

Second, Brisbin contends there was no nexus between his allegedly obstructive actions and his sentencing because, even if he had been successful in posting his PSR on Facebook, it would not have made a difference in his sentencing hearing. Section 3C1.1(1) requires that the obstructive conduct occur with "respect to the investigation, prosecution, or sentencing of the instant offense of conviction." In United States v. Galaviz, 687 F.3d 1042 (8th Cir. 2012), after the defendant entered a guilty plea he conspired to murder a confidential informant. Id. at 1043. We held that the obstruction of justice enhancement did not apply because the defendant had already pleaded guilty and the record did not support a finding that the defendant believed the informant would testify at sentencing. We concluded the defendant "could not have intended to obstruct justice 'with respect to the instant offense' by plotting to kill [the informant] unless he thought [the informant] was going to testify against him at sentencing." Id. We suggested that, although "the enhancement does not apply," the defendant could be prosecuted for plotting to kill the informant. Id.

This case can be distinguished from Galaviz in at least two ways. First, Brisbin's obstructive conduct occurred within the PSR-objection period. The draft PSR was filed on November 26, 2014; Brisbin's recorded phone call to his mother occurred on December 3, 2014; and the parties' objections to the PSR were filed on December 9 and 10, 2014. Within this context, Brisbin could have believed, but could not have known what disputed facts the government would be required to prove at sentencing and whether the witnesses named in the PSR would testify. Second, because Brisbin's offense of conviction was a conspiracy, at least some of the people named in his PSR were necessarily involved in the criminal activity. Because Brisbin attempted to intimidate his co-conspirators and affect their possible testimony, we conclude that the district court did not err in finding the requisite nexus.

Third, Brisbin argues that, even if he successfully posted his PSR on Facebook, his conduct would not constitute obstruction of justice. As discussed in Application Note 4(A), "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . , directly or indirectly, or attempting to do so" triggers the obstruction of justice sentencing enhancement. U.S.S.G. § 3C1.1 cmt. 4(A). The government presented testimony to support a conclusion that posting a PSR on Facebook would likely place the named witnesses in danger, and the district court found that posting a PSR on Facebook would have the effect of intimidating witnesses who were named in the document. On review, "[w]e will not second guess [the district court's] judgment" as to witness credibility. Wahlstrom, 588 F.3d at 542. Therefore, we conclude that the district court did not err in finding Brisbin's conduct constituted obstruction of justice.

Finally, Brisbin argues that his note to a cooperating inmate, which the district court also relied upon in finding that Brisbin obstructed justice, did not constitute obstruction of justice. As discussed above, Application Note 4(A) encompasses conduct toward a witness that is threatening or intimidating. A law enforcement witness at Brisbin's sentencing hearing concluded the note was a threat intended "to influence [the cooperating inmate's] testimony and cooperation with the government." We are not certain the note alone would constitute obstructive conduct. The district court, however, did not err in using this conduct as additional support for applying the obstruction of justice enhancement.

B. Alternate Sentence

Brisbin also argues that the district court erred in imposing an alternate sentence of 420 months. Specifically, Brisbin contends that, assuming the district court erred in imposing the obstruction of justice enhancement and eliminating the acceptance of responsibility adjustment, a 420-month sentence would be substantively unreasonable in light of the 18 U.S.C. § 3553(a) factors. "We review the substantive reasonableness

of the overall sentence under an abuse of discretion standard." <u>United States v. Sayles</u>, 674 F.3d 1069, 1072 (8th Cir. 2012).

Because we conclude that the district court properly calculated the sentence pursuant to the guidelines and did not err in applying the obstruction of justice enhancement, we need not consider whether the alternate proposed sentence was reasonable. To the extent Brisbin argues the sentence actually imposed was substantively unreasonable, we also conclude that the district court did not abuse its discretion. Because the sentence was within the advisory guideline range of 360 months to life in prison, we presume that the sentence was reasonable. <u>United States v. Avalos</u>, 817 F.3d 597, 602 (8th Cir. 2016). Further, evaluating the § 3553(a) factors, the district court found that Brisbin's extensive criminal history and the seriousness of the instant offense justified a sentence of 420 months. Accordingly, we hold that the district court did not abuse its discretion.

## III. Conclusion

Based on the foregoing, we affirm the judgment of the district court.

_____