# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-3295

_____

United States of America

*Plaintiff - Appellee*

v.

Dario Angel Andrejol Real

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: April 16, 2020
Filed: June 15, 2020
[Unpublished]

_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Dario Angel Andrejol Real pled guilty to one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. He was sentenced to 135 months imprisonment, which was at the low end of his advisory

Guidelines range. Real now appeals his sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.[1]

At sentencing, Real's final presentence investigation report (PSR) calculated his overall offense level at 33. This included a two-level reduction, pursuant to USSG § 3B1.2(b), because Real was a minor participant in the conspiracy, but it included a two-level enhancement, pursuant to USSG § 3C1.1, for obstruction of justice. Additionally, Real did not receive a reduction for acceptance of responsibility pursuant to USSG § 3E1.1, and the district court determined that he was ineligible for safety-valve relief pursuant to USSG § 5C1.2 and 18 U.S.C. § 3553(f). With a criminal history category of I, the district court determined that Real's Guidelines range was 135 to 168 months imprisonment, and it ultimately imposed a sentence of 135 months imprisonment.

Real appeals the district court's (1) application of the obstruction-of-justice enhancement, (2) denial of the reduction for acceptance of responsibility, and (3) determination that he was ineligible for the safety valve. All three of these rulings were related to the district court's finding that Real threatened a confidential witness.

We review the district court's underlying factual findings for clear error and its application of the Guidelines de novo. See United States v. Nguyen, 339 F.3d 688, 690 (8th Cir. 2003) (obstruction-of-justice enhancement and acceptance-of-responsibility reduction); United States v. Quintana, 340 F.3d 700, 702 (8th Cir. 2003) (safety-valve relief).

At sentencing, the government presented evidence suggesting that Real threatened a confidential witness involved in the case. Specifically, a correctional

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

officer testified that, while she was escorting Real in the prison, they crossed paths with the confidential witness, and Real began yelling obscenities at him and called him a "snitch." See United States v. Galaviz, 687 F.3d 1042, 1044 n.1 (8th Cir. 2012) (Smith, J., dissenting) (noting that "snitch" is "a negative slang term offenders use to describe an informant"). This was corroborated by other jail employees who also overheard Real yell various obscenities and call the confidential witness a "snitch." The confidential witness also testified at the sentencing hearing, and stated that during this exchange, Real threatened to kill him. The confidential witness also mentioned that he was fearful because he heard that "people [had] been threatening [his] family" and that he was given a note indicating that Real "was asking questions about [the witness's] family and trying to figure out where they stayed[.]"

From this testimony, the district court determined that, by a preponderance of the evidence, "there were threats made to a confidential informant. And although there is some discrepancy as to the exact language used, it is absolutely clear to the Court that these statements did, in fact, amount to threats made to the confidential informant." See United States v. Augustine, 663 F.3d 367, 374 (8th Cir. 2011) (noting that the district court's factual findings "need only be made by a preponderance of the evidence"). With this in mind, we turn to each of Real's arguments on appeal.

First, we find no error in the district court's imposition of a two-level enhancement, pursuant to USSG § 3C1.1, for obstruction of justice. The Guidelines define obstructive behavior, in part, as "threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . directly or indirectly, or attempting to do so." USSG § 3C1.1, comment. (n.4(A)); see also United States v. Walterman, 343 F.3d 938, 941 n.3 (8th Cir. 2003) ("Sentencing guideline commentary is authoritative unless it violates the Constitution or is inconsistent with federal law."). Although Real argues that there was insufficient evidence to support the district court's

conclusion, we reject this contention because the district court's factual findings were not clearly erroneous in light of the evidence.

Moreover, Real argues that there was insufficient evidence to demonstrate that his statements to the confidential witness were "true threats." See, e.g., United States v. Mabie, 663 F.3d 322, 331 (8th Cir. 2011). Assuming, without deciding, that the "true threat" standard applies to the obstruction-of-justice enhancement, Real's conduct satisfied that standard. We have noted that "[a] 'true threat' is defined as a 'statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another.'" Id. at 330 (quoting Doe v. Pulaski Cnty. Special Sch. Dist., 306 F.3d 616, 624 (8th Cir. 2002) (en banc)). In deciding whether "a reasonable recipient would interpret a communication as a threat, the communication must be viewed in . . . the context of the totality of the circumstances in which the communication was made." Id. at 331 (internal quotation marks omitted). Here, in view of the totality of the circumstances, a reasonable recipient would have interpreted Real's statements as a threat—Real yelled profanities at the confidential witness, branded him as a "snitch," and explicitly threatened his life. This occurred after the witness had cooperated with the government in its investigation of Real and others. Even assuming that the "true threat" standard applies, we see no error in the district court's determination that Real threatened the confidential witness.

Real also contends that, under Galaviz, he could not have intended to obstruct justice with respect to the instant offense because he had already pled guilty prior to encountering the witness in the jail. In Galaviz, we reversed the application of an obstruction-of-justice enhancement based on conduct which occurred after the defendant had entered a guilty plea because the record did not support a finding that the defendant believed that the informant would be called to testify at sentencing. 687 F.3d at 1043. However, this case is readily distinguishable from Galaviz, as Real's "obstructive conduct occurred within the PSR-objection period. . . . Within this

context, [Real] could have believed, but could not have known, what disputed facts the government would be required to prove at sentencing and whether the witnesses named in the PSR would testify." United States v. Brisbin, 659 F. App'x 903, 906 (8th Cir. 2016) (per curiam). Although the PSR did not identify the confidential witness by name, it describes that witness's various interactions with the conspirators and his cooperation with law enforcement. This was a sufficient basis from which Real could conclude that the confidential witness was the person who assisted the government in the prosecution of this case and that he could be a potential witness at Real's sentencing or at some of his co-defendants' trials. See United States v. Jensen, 834 F.3d 895, 900-01 (8th Cir. 2016) (collecting cases and noting that the obstruction-of-justice enhancement also applies if the obstructive conduct at issue concerns "a closely related offense," such as that of a co-defendant). Accordingly, we hold that the district court did not err in applying the obstruction-of-justice enhancement.

Next, the district court appropriately denied an offense level reduction for acceptance of responsibility. Application Note Four to USSG § 3E1.1 explains that conduct sustaining the application of an obstruction enhancement usually means that the defendant has failed to accept responsibility for his conduct, absent an "extraordinary case[]." See also United States v. Smith, 665 F.3d 951, 957 (8th Cir. 2011) ("Ordinarily, a defendant who obstructs justice is not entitled to the reduction for acceptance of responsibility."). While there is no "magic formula for defining an extraordinary case," we often look to whether the obstructive conduct was a one-time occurrence or repeated, whether it ceased voluntarily, and whether the defendant denied committing the obstructive conduct at sentencing. United States v. Honken, 184 F.3d 961, 968-69 (8th Cir. 1999). "Extraordinary cases" are "extremely rare and highly exceptional." Id. at 970. On the record before us, we see nothing "extraordinary" about this case such that the district court clearly erred in declining to give Real a reduction for acceptance of responsibility.

Finally, we are unpersuaded by Real's argument concerning his eligibility for safety-valve relief under USSG § 5C1.2 and 18 U.S.C. § 3553(f). "To be eligible for safety-valve relief, the defendant must not have used violence or credible threats of violence while attempting to avoid detection or responsibility for the offense of conviction." United States v. Sandoval-Sianuqui, 632 F.3d 438, 443 (8th Cir. 2011) (internal quotation marks omitted); see 18 U.S.C. § 3553(f)(2); USSG § 5C1.2(a)(2) & comment. (n.3). It is the defendant's burden to demonstrate he is eligible for such relief. United States v. Aguilera, 625 F.3d 482, 488 (8th Cir. 2010). Because Real was subject to the obstruction-of-justice enhancement for threatening a witness, the district court did not clearly err in determining that he was ineligible for safety-valve relief. E.g., Sandoval-Sianuqui, 632 F.3d at 443. And although Real asserts that he did not threaten the witness in order "to avoid detection or responsibility for the offense of conviction," as he already pled guilty to the offense, we again note that he threatened the confidential witness at a time when Real "could have believed, but could not have known, what disputed facts the government would be required to prove at sentencing and whether the witnesses named in the PSR would testify." Brisbin, 659 F. App'x at 906.

For these reasons, we affirm Real's sentence.

_____