# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2847
_____

United States of America

*Plaintiff - Appellee*

v.

Jeremiah Duwon Snead

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: June 12, 2023
Filed: July 31, 2023
[Unpublished]
_____

Before LOKEN, COLLOTON, and ERICKSON, Circuit Judges.
_____

PER CURIAM.

After a jury convicted Jeremiah Snead of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), the district court[1] sentenced him to 120 months' imprisonment. At sentencing, the court applied a two-

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

level upward enhancement for obstruction of justice under U.S.S.G. § 3C1.1, resulting in an advisory sentencing guideline range of 130 to 162 months' imprisonment. Since the guideline range was above the statutory maximum sentence, Snead's advisory guideline range was the statutory maximum sentence of 120 months. See U.S.S.G. § 5G1.1(a). Snead appeals, arguing the court erred in applying an obstruction of justice enhancement. We conclude there is no reversible error.

At the time of the instant offense, Snead was on supervised release. Shortly before his revocation hearing, two individuals ("W2" and "W3") called Iowa City Police Detective Gabe Cook to report safety concerns relating to their names appearing in Snead's paperwork. W2 and W3 were named in police reports as having provided evidence against Snead and were identified as potential witnesses for Snead's revocation hearing. W2 and W3 and a third person ("W1") were each listed by the government as trial witnesses. W1 declined to testify the day before trial. W2 failed to comply with the trial subpoena. W3 testified at Snead's trial, although reluctantly and expressing fear to multiple people due to being pressured not to cooperate from individuals close to Snead.

Following trial, the government obtained Snead's jail calls. In the weeks leading up to trial, Snead had been in regular contact with three cousins and discussed with them W1's and W3's anticipated testimony. In one call, Snead's cousin reported to Snead, "It's all good. Say no more bro. I already let them know what's up." In addition to the witnesses' reports to law enforcement of threats being made by Snead's family members or those close to him, the recorded jail calls also demonstrate that witnesses were being contacted on behalf of Snead for the purpose of influencing their anticipated trial testimony. Due to the family relationships, the government argued to the district court that when Snead advised his cousins about the identity of the witnesses and the substance of their expected testimony, Snead did so knowingly and with the intent that his family pressure or unlawfully influence the witnesses.

The district court presided over Snead's trial, which featured continually evolving witness lists based on people changing their mind about testifying. The court also listened to the recorded jail calls and credited the testimony of Detective Cook who investigated the reported threats. Based on the evidence before it, the district court found there was overwhelming evidence of obstruction of justice. The court found Snead knowingly told his cousins about who was testifying and what they were going to say to incite action to prevent it from happening. While Snead did not directly threaten or influence the anticipated witnesses, the court found there was no purpose in sharing this information with his cousins unless he was hoping they would do something about it. And they did do something about it, as two of the witnesses directly reported to law enforcement that they were being threatened by individuals closely connected to Snead and two of the three witnesses, although initially cooperating with the government, refused to testify at Snead's trial.

Having reviewed the district court's factual findings supporting the obstruction of justice enhancement, we find no clear error. See United States v. Edwards, 820 F.3d 362, 365 (8th Cir. 2016) (standard of review). The record demonstrates that Snead, while detained, provided the names of three of the government's anticipated witnesses to his cousins, he informed his cousins of their anticipated testimony, and Snead received regular updates from his cousins regarding the status of their testimony. The district court found that, at one point, Snead's cousin told him the problem had been "taken care of." Contrary to Snead's argument, whether Snead directly threatened, intimidated, or influenced a witness is not dispositive. See U.S.S.G. § 3C1.1, cmt. n.9 (stating a defendant is accountable for obstructive conduct that he "aided or abetted, counseled, commanded, induced, procured, or willfully caused"); see also United States v. Maurstad, 35 F.4th 1139, 1143, 1146 (8th Cir. 2022) (noting a defendant's attempt to publicize witness names supports an inference that he intended to intimidate or threaten them for purposes of § 3C1.1); United States v. Brisbin, 659 F. App'x 903, 906 (8th Cir. 2016) (per curiam) (determining that district court did not err in finding the defendant attempted to obstruct justice when he identified several government witnesses or cooperators during conversation with his mother, expressed his desire to harm them, and told her

-3-

that he was going to get a copy of his presentence investigation report and send it out and put it on his Facebook page).

The district court did not clearly err by finding Snead obstructed justice, and the court's findings are sufficient to support an obstruction of justice enhancement by a preponderance of the evidence.

We affirm the judgment of the district court.

_____