4 F.3d 987
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Paul J. GIBSON, Jr., Defendant-Appellant.
 No. 93-5060.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: August 18, 1993.
Decided: September 3, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Robert G. Doumar, District Judge. (CR-92-52-NN)
 William P. Robinson, Jr., Robinson, Madison, Fulton & Anderson, Norfolk, Virginia, for Appellant.
 Kenneth E. Melson, United States Attorney, Robert E. Bradenham II, Assistant United States Attorney, Norfolk, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before HALL, PHILLIPS, and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Paul J. Gibson appeals from his conviction and sentence on charges of conspiracy with intent to distribute marijuana, in violation of 21 U.S.C. Sec. 841 (1988), and carrying a firearm in the commission of a drug trafficking crime, in violation of 18 U.S.C.A.Sec. 924(c) (West 1976 & Supp. 1993). Although we find the conviction proper, we find error in the sentencing and remand for further proceedings.
 
 
 2
 In 1992, Agents Richard Skelton and Richard Price went to Billy Adkins's residence to pursue an ongoing drug investigation. While waiting for Adkins to arrive, the agents noticed a BMW automobile drive into the farm's lane, park fifty yards from the house, and turn off its lights and engine. After fifteen minutes passed without anyone exiting the car, the agents approached the vehicle, in which they found Gibson and observed a nine millimeter pistol next to him in the seat. They removed both the pistol and Gibson and questioned him about his presence. Gibson maintained that he was at the farm to purchase a tractor.
 
 
 3
 Only minutes after the officers began speaking with Gibson, a truck pulled into the lane. Adkins and his father-in-law, Fuller, were in the truck. The officers readily detected the odor of marijuana and discovered sixteen pounds of marijuana packaged for bulk sale in the truck. The officers separated Gibson, Adkins, and Fuller and waited for backup help to arrive. Meanwhile, the officers ran a check on Gibson's car and gun. During this period the officers did not attempt any interrogation of the suspects. When help arrived, interrogation of the individuals began. Gibson maintained his story about the tractor. Adkins corroborated his story at first, but when officers began to arrest Adkins, he confessed that he and Gibson were trafficking in marijuana. The three suspects were arrested and taken to the local sheriff's department.
 
 
 4
 At the jail, Gibson was interrogated by two officers. The officers began informing Gibson about his Miranda rights.[1] Gibson signed some portion of the rights waiver when he expressed some desire to speak to an attorney. At that point the officers stood up and informed Gibson that they could no longer continue the questioning. Gibson asked the officers to sit down, which they did. They informed Gibson that they could not continue without his completion of the waiver form. Gibson completed the waiver and subsequently confessed to the trafficking conspiracy.
 
 
 5
 Gibson complains on appeal that he was improperly detained prior to arrest and that his confession was illegally obtained. Both contentions are without merit.
 
 
 6
 The officers properly took Gibson's pistol and questioned him regarding his presence on the farm. Gibson parked his car near a barn in a rural area, on a farm whose owner was being investigated for drug trafficking, did not exit the vehicle for fifteen minutes, and was carrying a pistol. The officers had reasonable suspicion that criminal activity was afoot, making their brief questioning and securing of the pistol constitutional. Michigan v. Long, 463 U.S. 1032, 1048-50 (1983); Terry v. Ohio, 392 U.S. 1, 26-27 (1968).
 
 
 7
 Further, there was no other improper detention. Only minutes after the officers approached Gibson they were confronted with Adkins's truck and the sixteen pounds of marijuana. The officers were outnumbered and called for backup. Finally, the officers were checking Gibson's car and pistol to see if either were stolen or the gun were unregistered. Once backup officers arrived, it was only a matter of minutes before Adkins confessed, prompting Gibson's arrest. As the district court properly found, throughout Gibson's detention the officers were diligent in their attempts to investigate the situation and quickly substantiate or allay their suspicions. This is what was required. See United States v. Sharpe, 470 U.S. 675, 686 (1985). The officers acted reasonably in detaining Gibson until his arrest.
 
 
 8
 Gibson's confession was also properly obtained. Because his arrest was not improper, Gibson's claim that the confession was tainted by his detention is without merit. See Wong Sun v. United States, 371 U.S. 471 (1963).
 
 
 9
 We also find no Sixth Amendment violation relating to Gibson's confession. "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." Edwards v. Arizona, 451 U.S. 477, 484 (1981). Only if "the accused himself initiates further communication, exchanges, or conversations with the police" may further interrogation occur. Id. at 484-85. The district court found that Gibson initiated further discussion which, in turn, triggered interrogation that led to his confession. That finding is not clearly erroneous, see United States v. Pelton, 835 F.2d 1067, 1072 (4th Cir. 1987), cert. denied, 486 U.S. 1010 (1988), and is dispositive of this claim.
 
 
 10
 Although we find no infirmity in Gibson's conviction, we find that the district court improperly calculated his sentence. Gibson's offense level was enhanced by two points for obstruction of justice. United States Sentencing Commission, Guidelines Manual, Sec. 3C1.1 (Nov. 1991). The enhancement was based on the district court's finding that Gibson attempted to hire an assassin to kill the state prosecutor who initiated[2] his drug charges. We find that there was ample evidence that Gibson did attempt to have the initial prosecutor killed. However, we find that there is no basis for the obstruction enhancement.
 
 
 11
 Intimidating or threatening a witness or others is grounds for applying the enhancement. Id. comment. (n.3(a)). However, as this Court held in United States v. Brooks, 957 F.2d 1138 (4th Cir.), cert. denied, 60 U.S.L.W. 3879 (U.S. 1992), the threat must be directly communicated to the intended victim or must be made in"circumstances in which there is some likelihood that the [intended target] will learn of the threat." Id. at 1150. Neither are present here. Although the prosecutor in fact learned of the attempt to have her murdered, no direct threat was made, nor did the circumstances-Gibson contacted a friend of questionable moral character to attempt to find a hit man-have any perceived likelihood of disclosure.[3] Further, we note that there is no evidence that Gibson's plot to kill the prosecutor was motivated by a desire to impede the prosecution. The intended target was no longer involved in the case. Rather, Gibson's motivation appears to have been purely a desire for revenge. Thus, we find that the district court improperly enhanced Gibson's sentence for obstruction of justice. We vacate the sentence and remand for resentencing.
 
 
 12
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 13
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED
 
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [2]
 This state prosecutor was not the one who was prosecuting the federal charges, and the state charges were dropped when the federal convictions were entered
 
 
 [3]
 While we note that the disclosure actually occurred, such slim chances of disclosure were also present in Brooks, where the defendant also communicated his threat to another party. Brooks, 957 F.2d at 1150