# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3986

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Michael Scott Wahlstrom, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 23, 2009
Filed: December 1, 2009

_____

Before LOKEN, Chief Judge, MURPHY, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Michael Scott Wahlstrom pled guilty to seven counts related to possession and distribution of methamphetamine as well as possession of firearms. The district court[1] sentenced Wahlstrom to 384 months, the bottom of the guideline range. Wahlstrom appeals, arguing that the district court erred in applying a two level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and that his sentence was unreasonable. We affirm.

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

I.

In 2006 Michael Wahlstrom was arrested during a traffic stop and found to be in possession of a small amount of methamphetamine, approximately $1,600 in cash, and a .22 magnum revolver loaded with hollow point rounds. Several months later, he sold methamphetamine to a confidential informant in a controlled buy operation. Police executed search warrants on his residences shortly thereafter and discovered large quantities of methamphetamine prepared for distribution, an assault rifle, an automatic pistol, and ammunition. Wahlstrom subsequently admitted that he had been making approximately $100,000 per month trafficking in kilograms of methamphetamine, which he received from a Mexican criminal organization and distributed locally.

Wahlstrom pled guilty to a seven count indictment based on the conduct and contraband described above: conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, see 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; possession with intent to distribute 30 grams or more of a mixture and substance containing a detectable amount of methamphetamine, see id. §§ 841(a)(1) and (b)(1)(C); possession of a firearm in furtherance of a drug trafficking crime, see 18 U.S.C. § 924(c)(1); possession of a firearm and possession of ammunition by a convicted felon, see id. §§ 922(g)(1) and 924(a)(2); and possession with intent to distribute 50 grams or more of methamphetamine (actual), see 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

The presentence investigation report prepared for Wahlstrom's case calculated his guideline range as 324 to 405 months, plus a mandatory 60 month consecutive term for possession of a firearm in connection with a drug trafficking crime. See 18 U.S.C. § 924(c). This calculation included a two level upward adjustment to the base offense level for obstruction of justice. See U.S.S.G. § 3C1.1. The obstruction enhancement was based on evidence that while Wahlstrom was in custody awaiting

disposition of his charges, he attempted to hire someone to murder the wife of the Assistant United States Attorney prosecuting his case. Wahlstrom denied this accusation and objected to the obstruction enhancement.

The district court held multiple evidentiary hearings on the conduct underlying the enhancement. The government presented testimony from three inmates who were in prison with Wahlstrom. These men testified that Wahlstrom told them he intended to harm the prosecutor's wife because the prosecutor was giving him a lot of time and was trying to get Wahlstrom's girlfriend involved in the case.

One of the inmates, Derek Johnson, testified that Wahlstrom asked him whether he knew anyone who would carry out a hit on the prosecutor's wife. Johnson said that his brother would do it in exchange for a large amount of money. Wahlstrom told Johnson that he did not have enough cash, but would discuss giving Johnson's brother vehicles as payment. In fact, Johnson was cooperating with the government. At the direction of law enforcement officers, he arranged a telephone call between Wahlstrom and a deputy sheriff posing as Johnson's brother, ostensibly to discuss payment for the hit. This call was recorded, and the district court received a transcript of it into evidence.

At the beginning of the call, Johnson said to the deputy that he told Wahlstrom "basically that you were my brother and . . . that you were supposed to be the one to take care of that business." He said that Wahlstrom would "reassure you that he's going to pay you, and what he's going to pay you with. Now he's talking about a special kind of Suburban that's worth $70,000." Before putting Wahlstrom on the line, Johnson said to him: "Hey check it out, this is the guy who's supposed to be taking care of that little hit thing that we was talking about right." After discussing the Suburban, the deputy said to Wahlstrom, "Okay, when you, when you want that thing done?" Wahlstrom replied, "We'll just play it by ear and that [sic]." The deputy then said, "You know what, that car man, ya know, I'm kinda interested in some cash."

Wahlstrom replied that he would "work that out with Derek." When the deputy again asked when Wahlstrom "want[ed] it done," Wahlstrom said "I'm just saying, just not talking on these phones dude." He ended the call shortly thereafter.

Wahlstrom testified that he thought the telephone conversation was simply about selling his Suburban. He claimed that Johnson and the other inmates had concocted the story about the hit in order to obtain favorable treatment in their own cases. Two other inmates testified on Wahlstrom's behalf. One said that Johnson told him he could obtain leniency from the government by making up information about other inmates. The other testified that Johnson specifically told him he had fabricated the story about Wahlstrom's plot to kill the prosecutor's wife.

The district court found the government's witnesses credible. Based on their testimony and the recorded phone call, the court found the government had shown by a preponderance of the evidence that Wahlstrom had plotted to kill the wife of the Assistant United States Attorney prosecuting his case and had solicited an attempt on her life. It found this conduct amounted to an attempt to obstruct or impede the administration of justice within the meaning of § 3C1.1 and accordingly applied the two level upward adjustment.

Including the enhancement and 60 month mandatory consecutive term, Wahlstrom's guideline range was 384 to 465 months. The district court sentenced him to 384 months. Wahlstrom timely appealed. He argues that the district court erred in applying the obstruction of justice enhancement and that his sentence was unreasonable.

We review the district court's factual findings for clear error and we review de novo its application of the guidelines to those facts. United States v. McMannus, 496 F.3d 846, 850 (8th Cir. 2007). We review the reasonableness of the sentence imposed

"under a 'deferential abuse-of-discretion standard.'" United States v. Battiest, 553 F.3d 1132, 1135 (8th Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 41 (2007)).

II.

Wahlstrom challenges the district court's application of U.S.S.G. §3C1.1 in four ways. First, he argues that the district court clearly erred in concluding that he engaged in the conduct underlying the enhancement. Second, he argues that the evidence does not show his conduct rose to the level of an attempt and the enhancement is therefore inapplicable. Third, Wahlstrom contends that § 3C1.1 does not apply to actions taken against prosecutors or their family members. Finally, he maintains that he was motivated by revenge, not the desire to affect the prosecution of his case, and he therefore lacked the intent necessary for application of the enhancement. We address each of these arguments in turn.

Wahlstrom's attack on the district court's factual findings is unavailing. "A district court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility." United States v. Killingsworth, 413 F.3d 760, 763 (8th Cir. 2005). In its memorandum and order applying the enhancement, the district court carefully reviewed the testimony of each witness and provided specific reasons for its belief of some and disbelief of others. We will not second guess its judgment.

Moreover, the court's conclusion was not based solely on credibility judgments. Wahlstrom's own words in the recorded telephone call are powerful evidence against him. His claim that the conversation only concerned selling his Suburban cannot be squared with what he said. For example, the deputy sheriff told Wahlstrom he was "interested in some cash" and Wahlstrom replied that he would "work that out." The district court rightly pointed out that if this conversation was really about the sale of a Suburban, it would make no sense for the ostensible buyer to request cash from the

-5-

seller.  In addition, the deputy sheriff asked Wahlstrom, "When you want that thing done?", to which Wahlstrom replied, "We'll just play it by ear."  This exchange shows that Wahlstrom did not think he was discussing selling a car.  We conclude that the district court did not err in finding that Wahlstrom planned to arrange the murder of the wife of the Assistant United States Attorney prosecuting his case, and that he took steps to carry out this plan by seeking out a hitman and discussing payment with him.

We turn next to the argument that this conduct did not rise to the level of an attempt.  An attempt requires "(1) an intent to engage in criminal conduct, and (2) conduct constituting a substantial step toward the commission of the substantive offense which strongly corroborates the actor's criminal intent."  United States v. Lucas, 499 F.3d 769, 781 (8th Cir. 2007) (en banc) (internal quotation marks omitted).  Wahlstrom argues that his scheme was mere talk and that the conversations with Johnson and the deputy sheriff did not constitute the requisite "substantial step" toward consummation of his plan.

We disagree.  "'A substantial step . . . . must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude . . . that it was undertaken in accordance with a design to'" commit the substantive offense.  United States v. Mims, 812 F.2d 1068, 1077 (8th Cir. 1987) (quoting United States v. Mazzella, 768 F.2d 235, 240 (8th Cir. 1985)).  Wahlstrom asked Derek Johnson whether he knew anyone who would carry out a hit on the prosecutor's wife.  When Johnson ostensibly arranged a telephone conversation with a willing assassin, Wahlstrom discussed payment with him.  These actions were both necessary to the consummation of the scheme and strongly corroborative of Wahlstrom's criminal intent.  See, e.g., United States v. Adipietro, 983 F.2d 1468, 1479–80 (8th Cir. 1993) (affirming application § 3C1.1 where defendant attempted to bring about harm to witness through communications from jail); United States v. May, 625 F.2d 186, 194 (8th Cir. 1980) (defendant attempted to conceal government records where he asked one person to call another to see if records could be

concealed). Accordingly, the district court did not err in concluding that Wahlstrom's actions rose to the level of attempt within the meaning of U.S.S.G. § 3C1.1.

Wahlstrom argues next that the obstruction enhancement does not apply where a defendant targets a prosecutor or his family. We conclude that the guideline does apply in these circumstances. Section 3C1.1 provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

The language of § 3C1.1 is broad, and as the commentary recognizes, "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." Id. n.3. As an interpretive aid, the guideline's application notes provide a nonexhaustive list of the types of conduct which fall within its scope. Wahlstrom's argument rests primarily on the fact that while the notes specifically cover "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror," id. n.4(a), they say nothing about directing such actions toward prosecutors. Indeed, Wahlstrom suggests that prosecutors may be intentionally omitted because while witnesses and jurors are crucial to the proof of a case, attorneys merely present the evidence and advocate a result.

We are not persuaded. The distinction Wahlstrom advocates has little meaning in light of the plain language and purpose of the guideline. Threats of harm to members of a prosecutor's family could be extraordinarily disruptive to the criminal justice system, and such conduct fits within the guideline. Section 3C1.1 covers "attempt[s] to obstruct or impede[] the administration of justice," and it makes no distinction between different actors involved in the justice system.

Moreover, as Wahlstrom concedes, the list of covered conduct in the application notes is not exhaustive, and the absence of prosecutors from that list is therefore not dispositive. More important than the particular targets of a defendant's actions are the "nature . . . and seriousness" of the conduct and the likelihood that it will disrupt the administration of justice. § 3C1.1 n.3. In determining whether particular conduct is covered in light of these factors, the application notes direct us to compare the list of examples in application note 4 (covered conduct) with that in note 5 (conduct ordinarily not covered). Comparison of those lists shows that Wahlstrom's conduct is within the scope of the guideline. Covered conduct includes, for example, threatening witnesses and victims as well as perjury. See § 3C1.1 n.4. Conduct ordinarily not covered includes fleeing from arrest and various immaterial false statements unlikely to affect the investigation or prosecution of the offense. Notably, it does not include any kind of threats or violence. See id. nn. 5, 6. Taking these two sets of examples as our guideposts, it is clear that attempting to procure the murder of a prosecutor's wife falls well toward the "covered" end of the spectrum.

Several courts, including ours, have interpreted § 3C1.1 in a similar way, applying the guideline to threats or attempts to harm prosecutors and judges. See, e.g., United States v. Dehghani, 550 F.3d 716, 721–22 (8th Cir. 2008) (approving application of § 3C1.1 based on defendant's threats toward trial judge); United States v. Black, 168 F. App'x 272, 275–76 (10th Cir. 2006) (unpublished) (defendant offered cellmate $50,000 to murder prosecutor); United States v. Bellrichard, 801 F. Supp. 263, 266 (D. Minn. 1992) (defendant "obstructed justice within the meaning of the guidelines" by sending threatening letters to prosecutor and court personnel). We conclude that prosecutors are no less significant than witnesses or jurors for purposes of § 3C1.1. Where the other elements of the guideline are met, threats or attempts to harm a prosecutor or his family support an upward adjustment for obstruction of justice.

Wahlstrom argues, finally, that even if actions directed at a prosecutor fall within the scope of § 3C1.1, his conduct is not covered because he lacked the requisite intent. He contends that §3C1.1 requires that the defendant act with intent to affect the course of his case and that his motive was pure vengeance. We conclude that the district court properly applied § 3C1.1 based on the finding that Wahlstrom acted willfully in attempting to have the prosecutor's wife murdered, regardless of whether he was motivated by revenge or the desire to affect his case. We note first that Wahlstrom's claim that he was motivated solely by revenge is only a post hoc explanation of his behavior. The district court made no explicit finding about his motive, but its statement of reasons for the sentence—in which it characterized Wahlstrom's conduct as "an attempt to terrorize an officer of the Court"—suggests it found he sought to influence the prosecutor's actions. The evidence was certainly sufficient to support such a conclusion.

We need not pursue Wahlstrom's true motive further, however, because we have already recognized that conduct such as his will support an obstruction enhancement whether motivated by the desire to impede the proceedings or by vengeance. In United States v. Johnson, 978 F. Supp. 1305, 1309 (D. Neb. 1997), the district court applied § 3C1.1 upon finding that the defendants "willfully attempted to have [a witness] harmed to *silence or punish* him." (Emphasis added). We affirmed, holding that "attempt[ing] to have [a witness] harmed . . . . is sufficient as a matter of law to warrant a two-level enhancement for obstruction of justice." United States v. Valdez, 146 F.3d 547, 555 (8th Cir. 1998), cert. denied, 525 U.S. 938 (1998).

Having concluded that there is no material distinction between witnesses and prosecutors in this case, we find that Valdez controls here. Attempting to harm a prosecutor's family member is "so inherently obstructive of the administration of justice that the enhancement should be applied if the defendant deliberately engaged in that conduct, regardless of [his or] her specific purpose." United States v. Cassiliano, 137 F.3d 742, 747 (2d Cir. 1998) (internal quotation marks omitted). Put

another way, some conduct simply *is* obstruction of justice regardless of the effects the actor intended or expected. Whether Wahlstrom was motivated by vengeance or by the desire to affect his case, then, the district court did not err in applying § 3C1.1.

Wahlstrom cites an unpublished opinion from the Fourth Circuit for the proposition that § 3C1.1 does not apply if the defendant is motivated solely by vengeance. See United States v. Gibson, 4 F.3d 987 (table), 1993 WL 343324 (4th Cir. Sept. 3, 1993) (per curiam). We are of course bound by our own precedent, and Gibson is at best persuasive authority. We do not find it to rise even to that level here, for it is distinguishable from Wahlstrom's case. The defendant in Gibson faced state drug charges, which were dropped after federal charges were instituted. See id. at *2. During the prosecution of the federal charges, the defendant attempted to hire an assassin to kill the state prosecutor who had initiated the state charges. Id. The court found § 3C1.1 inapplicable, noting that "there [was] no evidence that Gibson's plot to kill the [state]  prosecutor was motivated by a desire to impede the [federal] prosecution." Id.

Gibson is different from the present case because there the target was involved in a separate proceeding—state, not federal—which had already terminated by the time of the defendant's scheme. Thus, killing the state prosecutor could not possibly have affected the defendant's federal prosecution unless it were intended as an indirect threat. If the defendant had no such intent, he did not act "with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," § 3C1.1, and the threshold requirement of the Guideline was not met. The defendant's motive in Gibson was primarily relevant, then, to the nexus between the obstructive conduct and the offense of conviction. In Wahlstrom's case, that nexus is

undisputed—he targeted the family of the prosecutor who was handling his case while awaiting the disposition of his charges. <u>Gibson</u> is thus inapposite.[2]

We conclude that the district court did not err in applying a two level enhancement pursuant to U.S.S.G. § 3C1.1. We accordingly turn to Wahlstrom's claim that his sentence was unreasonable.

III.

In reviewing the reasonableness of a sentence, we apply a "deferential abuse-of-discretion standard." <u>Battiest</u>, 553 F.3d at 1135. We must "first ensure that the district court committed no significant procedural error at sentencing. . . . If the decision was procedurally sound, we then review the substantive reasonableness of the sentence[,] considering the totality of the circumstances." <u>Id.</u> (internal quotation marks and citations omitted). As relevant here, a district court commits procedural error in sentencing when it fails to consider all of the sentencing factors enumerated in 18 U.S.C. § 3553(a), bases its sentence on clearly erroneous facts, or fails adequately to explain the chosen sentence. <u>United States v. Smith</u>, 573 F.3d 639, 658 (8th Cir. 2009).

---

[2] Wahlstrom also relies on <u>United States v. Haddad,</u> 10 F.3d 1252 (7th Cir. 1993). In that case the district court applied the obstruction enhancement because the defendant said "I want to kill somebody" as a prosecutor walked past him outside the courtroom. <u>See</u> <u>id.</u> at 1263. The court of appeals concluded that § 3C1.1 did not apply to this conduct because "it is obvious that [it was] not committed 'in the course of attempting to avoid responsibility for the offense of conviction.'" <u>Id.</u> at 1266 (<u>quoting</u> U.S.S.G. § 1B1.3). The court found the record inadequate to show that the defendant's comment was intended as any sort of threat at all, for little "*factual* information" had been furnished. <u>See</u> <u>id.</u> (emphasis in original). The record here is significantly different.

Wahlstrom argues that the district court committed procedural error by failing adequately to consider his "history and characteristics." 18 U.S.C. § 3553(a)(1). In particular, Wahlstrom contends that the district court's refusal to hear from witnesses who attended the sentencing hearing to testify on his behalf shows that the court gave inadequate consideration to these factors. We disagree.

We look to "the entire sentencing record, not merely the district court's statements at the hearing" in order to determine whether the court addressed the relevant considerations. Battiest, 553 F.3d at 1135. In this case the record shows that the district court was presented with, and properly considered, a great deal of information about Wahlstrom's personal history. The court heard testimony during one of the evidentiary hearings from Wahlstrom's brother and two longtime acquaintances. It also heard from Wahlstrom himself at the sentencing hearing. The information provided by these witnesses and the presentence investigation report provided an adequate basis for the district court to consider Wahlstrom's history and characteristics. The court was accordingly within its discretion in declining to take further testimony at the sentencing hearing.

Nothing in the record indicates that the district court failed to consider any one of the § 3553(a) factors, nor was its explanation of the sentence inadequate. "[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." Rita v. United States, 551 U.S. 338, 356–57 (2007). While the court did not explain extensively its treatment of each individual factor, it did discuss those factors it found salient. Given that the sentence was within the guidelines range, no more explanation was required. Id. at 357. The district court committed no procedural error in sentencing Wahlstrom.

We turn finally to Wahlstrom's argument that his sentence is substantively unreasonable. We judge the substantive reasonableness of the sentence with reference to the factors enumerated in 18 U.S.C. § 3553(a). United States v. Killgo, 397 F.3d

628, 630–31 (8th Cir. 2005). "Where, as here, the sentence imposed is within the advisory guideline range, we accord it a presumption of reasonableness." Battiest, 553 F.3d at 1136 (internal alterations and citations omitted).

Paralleling his claim of procedural error, Wahlstrom argues first that the district court gave inadequate weight to his "history and circumstances." 18 U.S.C. § 3553(a)(1). We cannot conclude that the district court abused its discretion in weighing Wahlstrom's background as it did. As discussed, the court was presented with extensive information about Wahlstrom's painful personal history, and its statement of reasons for the sentence acknowledged his "difficult childhood." The fact that the court imposed a sentence at the bottom of the guideline range further supports the conclusion that it gave adequate weight to Wahlstrom's history.

Wahlstrom also argues that the guidelines overstated the severity of his criminal history and that the district court abused its discretion in failing to account for this fact. We are not persuaded. The district court acknowledged that Wahlstrom's criminal history was nonviolent, but it was within its discretion in finding that history "exceptional" in its extent and continuity. Indeed, even conceding that some of Wahlstrom's criminal history points were attributable to minor offenses, his criminal history category would not have decreased unless the court were to ignore more than 30 of his 43 total criminal history points. The district court did not abuse its discretion in declining to do so.

Wahlstrom finally argues that the district court gave too much weight to the conduct underlying the obstruction of justice enhancement. We disagree. Wahlstrom concedes that this conduct could properly be considered under § 3553(a); he simply contends again that his actions were nothing more than empty threats and the district court gave them too much weight. To the contrary, we have already concluded that the district court properly found Wahlstrom attempted to arrange the murder of his prosecutor's wife. It was well within its discretion in taking this conduct seriously.

-13-

Moreover, the fact that the court sentenced Wahlstrom at the bottom of the guideline range shows that it did not give undue weight to this factor.

None of Wahlstrom's arguments shows that the district court abused its discretion in weighing the various sentencing factors as it did. Affording the district court's sentencing decision the significant deference it is due, see Gall, 552 U.S. at 52–53, we do not believe that Wahlstrom's sentence is unreasonable.

IV.

We conclude that the district court did not err in applying a two level upward adjustment to Wahlstrom's offense level under U.S.S.G. § 3C1.1. We also conclude that the sentence imposed by the district court was not unreasonable. Accordingly, we affirm the sentence.

_____

-14-