# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1732

_____

United States of America,

        Appellee,

v.

Jeffrey Smith,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Northern District of Iowa.
\*
\*
\*

_____

Submitted: October 21, 2011
Filed: December 27, 2011

_____

Before RILEY, Chief Judge, SHEPHERD, Circuit Judge, and WEBBER,[1] District Judge.

_____

RILEY, Chief Judge.

Jeffrey Smith pled guilty to knowingly and intentionally distributing five or more grams of actual (pure) methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The United States Probation Office prepared a presentence investigation report (PSR) calculating an advisory sentence range of 135 to 168 months under the United States Sentencing Guidelines (U.S.S.G. or Guidelines). Over

_____

[1] The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

Smith's objection, the district court[2] adopted the advisory Guidelines range and sentenced Smith to the minimum recommended sentence of 135 months imprisonment. Smith appeals the district court's sentencing decision, and we affirm.

## I.    BACKGROUND
### A.    Facts

On June 4, 2010, Smith sold 27.52 grams of 99% pure methamphetamine for $2,500 to Special Agent Ryan Moore, an undercover agent with the Iowa Division of Narcotics Enforcement. The confidential informant who initially introduced Smith to Special Agent Moore was present for the sale. On June 17, 2010, officers with the North Central Iowa Narcotics Task Force executed a warrant to search Smith and his home, discovering methamphetamine and various drug paraphernalia.

Smith, through his attorney, obtained documents relating to this investigation from which he was able to infer that the informant was cooperating with the authorities. On September 1, 2010, Smith initiated a series of text messages with Special Agent Moore which produced the following dialogue:

SMITH: [The informant] is a federal informant

SPECIAL AGENT MOORE: that's what I heard I'm not thinking that its real cool. I'm working on taking care of it!!

SMITH: U lure him somewhere he won't be a problem any more

SPECIAL AGENT MOORE: I need to talk to u but not over the phone r u going to be around after labor day?

SMITH: Taking vacation to FL plan on being back by then unless I don't want 2 leave

---

[2] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

SPECIAL AGENT MOORE: k I will text u on Monday let me no if u go to Florida

SMITH: K

Eight days later, on September 9, 2010, Special Agent Moore initiated a text message conversation with Smith. This conversation read:

SPECIAL AGENT MOORE: What's up I have some news.

SMITH: whats that?

SPECIAL AGENT MOORE: talked to [the informant] sounds like he might come up and see me next week. r u interested

SMITH: without a doubt

SPECIAL AGENT MOORE: k will call when I know more

SMITH: cool i get the rest taken care of. Thanks man.

Special Agent Moore contacted Smith again on October 25, 2010, this time in a recorded telephone conversation. Special Agent Moore told Smith the informant would be coming to town soon and asked, "you still interested in that?" The conversation proceeded as follows:

SMITH: yeah.

SPECIAL AGENT MOORE: What, uh, what—are you just gonna beat the f_ _ _ out of him, or what are you gonna do?

. . . .

SMITH: I'm not sure yet.

SPECIAL AGENT MOORE: All right. Well, if I think I know what you're going to do to him, you gotta make sure this s_ _ _ gonna be right.  Because if he truly is a snitch, you can't f_ _ _ this thing up because then everybody's going to be in trouble. . . .

what'd you have in mind? I got something in mind; what were you thinking?

SMITH: I don't want him breathing.

. . . .

SPECIAL AGENT MOORE: I say we take care of it.

SMITH: Yeah, definitely.

SPECIAL AGENT MOORE: All right.  Can you . . . I mean, you got a piece?

SMITH: Yeah.

SPECIAL AGENT MOORE: Alright, well I got one too.  That's what I'm saying; I mean, we both need one.  You know, if we're gonna f_ _ _ _ _ do this right we'll just take him out somewhere and f_ _ _ _ _ take care of business.

SMITH: Yup.

SPECIAL AGENT MOORE: I mean, is that what you're thinking?

SMITH: Yup.

Finally, Special Agent Moore inquired whether Smith could "get [a weapon] hooked up before Wednesday" and Smith replied "Oh yeah."  The conversation ended when the two men agreed to "get that hooked up" and "go from there."

-4-

Special Agent Moore attempted to call Smith again but received no answer, and there were no further communications between Smith and Special Agent Moore. Smith was arrested on November 1, 2010.

### B.      Procedural History

Smith was indicted in the United States District Court for the Northern District of Iowa for (1) conspiracy to distribute fifty or more grams of a substance containing methamphetamine and five or more grams of actual (pure) methamphetamine, and (2) distribution of five or more grams of actual (pure) methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846.  Smith pled guilty to distributing five or more grams of actual (pure) methamphetamine, and the prosecution dismissed the conspiracy charge.

The PSR calculated an advisory Guidelines sentence range of 135 to 168 months.  This recommendation included an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and denied the reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, Application Note 4.  The district court held a sentencing hearing at which it heard testimony from Special Agent Moore and received evidence relating to his communications with Smith.  Over Smith's objection, the district court adopted the advisory Guidelines range and sentenced Smith to the minimum recommended sentence of 135 months imprisonment and four years supervised release.

## II.     DISCUSSION
### A.      Standard of Review

Smith argues the district court erred by enhancing his sentence for obstruction of justice and not reducing his sentence for acceptance of responsibility.  "We review the district court's factual findings for clear error and . . . its application of the guidelines to those facts" de novo.  See United States v. Walstrom, 588 F.3d 538, 542 (8th Cir. 2009).

### B. Obstruction of Justice

We first consider Smith's claim that the district court erred by applying Guidelines § 3C1.1 for "Obstructing or Impeding the Administration of Justice." Section 3C1.1 provides

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

A district court may apply the enhancement for obstruction of justice only if it finds by a preponderance of the evidence the defendant engaged in the relevant conduct. See United States v. Wisecarver, 644 F.3d 764, 773 (8th Cir. 2011).

Because there was no evidence the informant was actually threatened or was even aware of the communications between Smith and Special Agent Moore, there is no basis to find Smith actually obstructed or impeded the investigation by "threatening, intimidating, or otherwise unlawfully influencing" a government witness. U.S.S.G. § 3C1.1, Application Note 4(A). Therefore, the relevant inquiry is whether Smith attempted to do so. See id.

"An attempt requires (1) an intent to engage in criminal conduct, and (2) conduct constituting a substantial step toward the commission of the substantive offense which strongly corroborates the actor's criminal intent." Wahlstrom, 588 F.3d at 543 (internal marks omitted). Smith claims neither element of this test was met, but we disagree.

First, Smith argues the evidence was insufficient to show he intended to obstruct justice, but this argument is unavailing. Among other incriminating

statements, Smith told Moore, "U lure him some where he won't be a problem any more," and "I don't want him breathing." When Special Agent Moore suggested "we'll just take him somewhere and f_ _ _ _ _ take care of business" and asked Smith "is that what you're thinking?" Smith replied "Yup."

Smith maintains "the record evidences that [he] never had anything specific in mind, and further that [his] comments about harming the [informant] were mere exaggerated talk in response to suggestions and questions by the undercover agent." Whether Smith's comments reflect a genuine intent to obstruct justice or were mere braggadocio is a question of fact akin to a credibility determination that the district court was in a far better position to address than are we. See, e.g., Wahlstrom, 588 F.3d at 542. Smith's statements and text messages to Special Agent Moore reasonably support the inference that Smith intended to interfere with or harm the informant. The district court did not clearly err in finding Smith intended to obstruct justice. See United States v. Valdez, 146 F.3d 547, 555 (8th Cir. 1998) (upholding the district court's application of the obstruction enhancement because "the government[] need[ed] only to prove by a preponderance of the evidence" that the defendants had the requisite intent and "the District Court did not clearly err in its finding that the defendants attempted" to harm a material witness).

Smith also contends the district court erred in finding that he took a "substantial step" toward obstructing justice. We reject this argument as well. A substantial step is one that is "necessary to the consummation of the crime and . . . of such a nature that a reasonable observer, viewing it in context could conclude that it was undertaken in accordance with a design to commit the substantive offense." Wahlstrom, 588 F.3d at 543 (internal quotation marks omitted). The district court found the substantial step "occurred on September 1st when [Smith] asked the agent working in an undercover capacity to lure the confidential informant."

In Wahlstrom, the defendant, who was in custody awaiting the final disposition of certain drug trafficking charges, attempted to solicit a hitman to murder the prosecutor's wife. See id. at 541. Unbeknownst to Wahlstrom, the "hitman" was actually an undercover agent. See id. Wahlstrom had, through an associate, asked the agent to carry out the hit, and Wahlstrom and the agent discussed, without agreeing on, the terms of payment. See id. at 541-42. We held this conduct constituted a substantial step amounting to attempted obstruction of justice. Id. at 543.

We see no significant distinctions between Wahlstrom's conduct and Smith's conduct for the purposes of the substantial step requirement. Smith attempts to distinguish Wahlstrom because Smith did not offer to pay Special Agent Moore to kill the informant. An offer of payment was not necessary for a reasonable observer to conclude Smith contacted Special Agent Moore in furtherance of a plan to obstruct justice. Smith believed Special Agent Moore, posing as a fellow methamphetamine dealer whose criminal activities were also in jeopardy, had his own reasons to prevent the informant from continuing to cooperate with the authorities. As such, Smith readily could have believed contacting Special Agent Moore would substantially further Smith's goal even though he made no offer of payment. Given the pre-existing relationship between Smith, Special Agent Moore, and the informant, it was reasonable for the district court to conclude this conduct constituted a substantial step.

We also reject Smith's contention the September 1 text messages did not constitute a substantial step because they were "merely a reply to an idea which originated with the undercover agent." This argument assumes Smith, when he initially contacted Special Agent Moore to expose the informant, did not anticipate Special Agent Moore's response. A reasonable observer could determine Smith was contemplating violence when he sent the initial text message. Furthermore, Special Agent Moore's reply—"I'm working on taking care of it!!"— is also ambiguous. Smith's response—"U lure him some where he won't be a problem any more"—could be viewed as the pivotal communication that introduced the idea of doing violence to

the informant.  The record simply does not support Smith's argument that the plan to target the informant for violence or harassment originated entirely with Special Agent Moore.

In addition, it was not necessary for the district court to find by a preponderance of the evidence that Smith intended to kill or do serious violence to the informant. Rather, the sentencing enhancement is applicable if Smith "attempted to obstruct or impede[] the administration of justice" with respect to his pending drug charges, see U.S.S.G. § 3C1.1, which Smith could accomplish by "threatening, intimidating, or otherwise unlawfully influencing" the informant.  Id., Application Note 4(A).  Even if the district court accepted Smith's assertion that he was not fully committed to having the informant killed, the court could still have concluded these communications constituted a substantial step toward completing a plan to interfere with or unlawfully influence the informant.  See, e.g., United States v. Adipietro, 983 F.2d 1468, 1479-80 (8th Cir. 1993) (affirming the obstruction of justice enhancement in part because "it was obvious" to the district court, based on the defendant's recorded jailhouse communications, that "something was afoot").

## C.    Acceptance of Responsibility

Smith also asserts the district court erred by failing to apply the two-level sentencing reduction for acceptance of responsibility.  See U.S.S.G. § 3E1.1.  We review the district court's denial of an acceptance of responsibility reduction for clear error.  United States v. Bell, 411 F.3d 960, 963 (8th Cir. 2005).  "Under [U.S.S.G.] § 3E1.1(a), the burden is on a defendant to show that he 'clearly demonstrated' acceptance of responsibility.  A district court's factual determination about whether the defendant accepted responsibility is entitled to great deference, and we will reverse it only if it is so clearly erroneous as to be without foundation."  United States v. Wallenfang, 568 F.3d 649, 661 (8th Cir. 2009) (internal quotations omitted). Ordinarily, a defendant who obstructs justice is not entitled to the reduction for acceptance of responsibility.  See U.S.S.G. § 3E1.1, Application Note 4.  In

"extraordinary cases," a defendant who obstructs justice may be eligible for the acceptance of responsibility reduction. Id.; see also United States v. Honken, 184 F.3d 961, 967-68 (8th Cir. 1999). We must therefore decide whether this is such a case.

In Honken, we explained "there is no magic formula for defining an 'extraordinary case.'" Honken, 184 F.3d at 969. We held the district court should decide whether the defendant accepted responsibility, in spite of his obstructive conduct, based on the totality of the circumstances. See id. at 968. We emphasized that these "extraordinary case[s]" are "extremely rare and highly exceptional." Id. at 970.

In Honken, we identified a number of non-exclusive factors for the district courts to consider in deciding whether a case is "extraordinary." These include whether

> the obstruction of justice was an isolated incident early in the investigation or an on-going effort to obstruct the prosecution[,] . . . whether [the defendant] voluntarily terminated his obstructive conduct, or whether the conduct was stopped by law enforcement[,] . . . [and] whether [the defendant] admitted and recanted his obstructive conduct, or whether he denied obstruction of justice at sentencing.

Id. at 968.

In the present case, the district court might reasonably have decided this was not an isolated incident because Smith participated in a series of telephone and text-message communications with Special Agent Moore between September 1, 2010, and October 25, 2010. Furthermore, Smith consistently has denied he intended to obstruct justice or took a substantial step toward accomplishing that objective. And finally, Smith did not voluntarily abandon his plans or try to dissuade Special Agent Moore

-10-

from harming the informant. The district court did not clearly err in denying the sentencing reduction based on acceptance of responsibility.

In <u>Honken</u>, we cautioned that the "extraordinary case" should not be construed so broadly as to swallow the "ordinary" case where the defendant who has not attempted to obstruct justice is granted a reduction for his acceptance of responsibility. <u>Honken</u>, 184 F.3d at 970. Nothing in this record suggests Smith did "anything that is more than ordinary, or [went] beyond what is usual, regular, common, or customary to earn an acceptance of responsibility downward departure." <u>Id.</u> (internal quotations omitted). Because Smith attempted to obstruct justice, yet did nothing "extraordinary" to demonstrate he accepted responsibility, the district court's denial of the sentencing reduction was entirely proper.

## III.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.[3]

_____

_____

[3] Because the district court properly calculated the advisory Guidelines range, we need not address whether the alternative sentence adopted by the district court would have supported a finding of harmless error. <u>Compare</u> <u>United States v. Johnston</u>, 533 F.3d 972, 978 (8th Cir. 2008) (determining the alleged sentencing errors were harmless because the district court properly calculated an alternative Guidelines sentence range and described with particularity why the alternative sentence was appropriate under the 18 U.S.C. § 3553(a) sentencing factors), <u>with</u> <u>United States v. Icaza</u>, 492 F.3d 967, 971 (8th Cir. 2007) ("[T]o support a finding of harmless error, the record clearly must show not only that the district court intended to provide an alternative sentence, but also that the alternative sentence is based on an identifiable, correctly calculated guidelines range.").