# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1007

_____

United States of America

*Plaintiff - Appellee*

v.

Donna Mary Zauner

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: June 15, 2012
Filed: August 16, 2012

_____

Before MURPHY, BRIGHT, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Donna Mary Zauner pled guilty to production of child pornography in violation of 18 U.S.C. § 2251(a) and (e) for photographs she took of her young daughters at ages six and two. The district court[1] sentenced Zauner to 216 months, departing and

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

varying downward from Zauner's guideline sentence of 360 months. Zauner challenges her sentence as substantively unreasonable. We affirm.

In early September 2010, Zauner contacted Alec Tafolla on an internet clearinghouse for rideshares and made arrangements for him to drive her and her two daughters, H.H. and B.Z., from Las Vegas, Nevada to her parents' home in upstate New York. H.H. was two years old and B.Z. was six years old at the time. Tafolla and Zauner maintained contact after he dropped them off in New York, and a few weeks later Zauner had asked Tafolla to drive her and her daughters to Winona, Minnesota to live with Alan Light, a man she had met on the internet. Several weeks later Zauner informed Tafolla that the relationship was not working. He drove to Winona to help her move out of Light's residence.

When Light returned home and realized that Zauner had left with her daughters while he was away, he checked his computer's internet history to try to determine where she had gone. He spotted an email account he did not recognize and which was later determined to belong to Tafolla. Light contacted the Winona police department after discovering that pornographic images of Zauner's children had been sent to that account.

Police located Tafolla and Zauner in a local motel. Zauner was interviewed and explained that during one of the trips Tafolla had discussed watching child pornography and that he had told her a prior fiancé had let him rub his penis against her five year old daughter's vagina. Zauner explained that Tafolla had requested pictures of her daughters and would specify the photographs he wanted her to send him. Zauner also turned over her cell phone which contained several images of her daughters.

Law enforcement officers reviewed text and email messages exchanged by Zauner and Tafolla between September 11 and October 5, 2010. They were not able

to recover all communications but discovered an image Tafolla had sent to Zauner of a female child with semen and the message, "show that to [H.H.] and [B.Z.] and tell them that's what I want to do." Tafolla sent another email with a video of a man having intercourse with a minor girl that was renamed "me and [H.H.]" Zauner sent Tafolla a photograph of B.Z. and Tafolla responded with a picture of his erect penis and the message "show her this." Zauner then sent Tafolla photographs of B.Z. and H.H. each naked from the waist down, seated in a chair with their legs spread to expose their genitals. Next she sent a photograph in which she is holding B.Z. whose legs are apart. Zauner is spreading B.Z.'s labia with her hand to expose her vagina. Tafolla responded, "I want you to show this pic you took to [H.H.]."

When questioned by police, Zauner first said that Tafolla had physically threatened her during the trip to Winona, demanding pictures of her daughters. She later acknowledged that this statement was false and that Tafolla had never threatened her. Her children were placed in foster care in Minnesota and eventually relocated to Pennsylvania to live with a relative.

The government issued a four count indictment against Zauner for production and distribution of child pornography, and Zauner agreed to plead guilty to one count of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e). The parties stipulated that Zauner's total offense level would be 46 which included enhancements for the ages of her daughters, the fact that she is their parent, her participation in a pattern of activity involving prohibited sexual conduct, as well as a three level reduction for acceptance of responsibility. Since Zauner had no criminal history, she was in category I which capped the offense level at 43, leading to a guideline sentence of life. Because this sentence exceeded the statutory maximum of 30 years the statutory maximum became the guideline sentence. See U.S.S.G. § 5G1.1(a). The government agreed to move for a downward departure for substantial assistance under U.S.S.G. § 5K1.1 if Zauner cooperated with Tafolla's prosecution.

The district court ordered a psychological evaluation before sentencing. The evaluation revealed that Zauner's intellectual functioning measured near the level considered to be mentally retarded, that she had grown up in an abusive household, and had been sexually assaulted as a minor. The psychologist reported that Zauner has a deep seated need for validation and affection and defers decisions to others. He concluded that Tafolla "targeted, groomed, and manipulated Ms. Zauner to satisfy his own prurient interests. . . . Ms. Zauner was desperate to be loved and accepted his version of what was right and wrong."

The government submitted a § 5K1.1 motion for substantial assistance but argued at sentencing that any departure should be minimal in light of the fact that Zauner had supplied it with misinformation and the "severe and terrible set of facts" underlying the conviction. The government also sought restitution in the amount of $10,000 for each child.

The district court sentenced Zauner to 216 months and 15 years of supervised release and ordered $20,000 in restitution owed jointly and severally with Tafolla. This sentence represented a 40% reduction from Zauner's guideline sentence. The court described the case as "very sad . . . in many, many ways" and stated

> There[] [are] some very basic needs that every child has a right to expect and one of those is that their mother will protect them from harm. And say what you will about Mr. Tafolla[,] [y]ou could have stopped this whole thing. He was a distance from you. There were no threats involved here and your children had a right to rely upon you to protect them . . . . There are very few cases where a mother is charged with participating in pornography in quite the way you have and I have to hold you accountable for that under the circumstances.

After the district court announced its sentence, Zauner protested, saying, "I'm not a sex offender . . . . [My daughters] were never harmed when I took the pictures.

-4-

They weren't even aware that I took the pictures. They were not." The district court responded that "you're their mother. They had a right to trust you and protect them from this."

On appeal Zauner argues that her sentence is substantively unreasonable in light of her history of trauma, borderline intellectual functioning, lack of criminal history, and relative culpability. The government argues that we cannot review the reasonableness of Zauner's sentence because we would in effect be reviewing the extent of the district court's downward departure under § 5K1.1. See United States v. Billue, 576 F.3d 898, 905 (8th Cir. 2009) ("Absent an allegation that the district court was motivated by an unconstitutional motive in arriving at its downward departure, we may not review the extent of [such] a downward departure in the defendant's favor." (citation omitted)).

The district court made clear that its reduction was based on both the § 5K1.1 motion and its consideration of the sentencing factors listed in 18 U.S.C. § 3553(a). Because the reduction included a variance as well as a departure, we review the substantive reasonableness of the sentence imposed for abuse of discretion, Gall v. United States, 552 U.S. 38, 51 (2007), and "judge the substantive reasonableness of the sentence with reference to the factors enumerated in 18 U.S.C. § 3553(a)." United States v. Wahlstrom, 588 F.3d 538, 547 (8th Cir. 2009). The district court has "wide latitude to weigh the § 3553(a) factors . . . in determining an appropriate sentence." United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009). Where as here the advisory guideline sentence is above the statutory maximum, the statutory maximum sentence is presumed reasonable. United States v. Lazarski, 560 F.3d 731, 733 (8th Cir. 2009). When a district court varies downward from a presumptively reasonable guideline sentence, "it is nearly inconceivable that the court abused its discretion in not varying downward still further." Lazarski, 560 F.3d at 733.

The district court made clear at sentencing that it was aware of the mitigating information contained in Zauner's psychological report and her argument that she was less culpable than Tafolla, who had been sentenced to 192 months. It also expressed concern that Zauner "just do[es]n't . . . get it [that] [t]his is a very, very serious offense." The district court asked about the well being of the children, received a victim impact statement from Winona County Protective Services, and was presented with the government's argument that

> [Defense counsel] referenced that the children hopefully didn't or don't appreciate what was done to them at the time. There will come a time when they'll appreciate what happened to them and why their mother was taken from them. . . . [They are] going to have to face counseling and treatment and overcome that hurdle. It's not over for the children.

The court concluded that the sentence was "significant punishment without more than necessary to accomplish" the objectives of § 3553(a).

This record demonstrates that the district court carefully considered the § 3553(a) factors in light of the mitigating evidence presented and the gravity of the offense. It imposed a sentence well below the guideline sentence and 3 years above the statutory minimum. We conclude that the district court did not abuse its discretion and that Zauner's sentence is not unreasonable.

Accordingly, we affirm the judgment of the district court.

BRIGHT, Circuit Judge, concurring.

As an appellate court, we owe substantial deference to the sentencing decisions of the district court. *Gall v. United States*, 552 U.S. 38, 51–52 (2007). In addition, as the majority notes, our precedent has a difficult time imagining any scenario that could warrant reversal of a downward departure. *United States v. Lazarski*, 560 F.3d

731, 733 (8th Cir. 2009) (stating "it is nearly inconceivable that the [district] court abused its discretion in not varying downward still further" from a presumptively reasonable guideline sentence). I concur in this case due to the institutional discretion owed the district court. However, I write separately to note the problems with the child pornography guidelines and to express my personal disagreement with the district court's sentencing decision in this case.

Congress delegated significant discretion to the Sentencing Commission to initially formulate the guidelines. *Mistretta v. United States*, 488 U.S. 361, 367 (1989). Such delegation of authority was a great idea, as "[d]eveloping proportionate penalties for hundreds of different crimes by a virtually limitless array of offenders is precisely the sort of intricate, labor-intensive task for which delegation to an expert body is especially appropriate." *Id.* at 379. The Commission also provided "some insulation from the distorting pressures of politics" and was in position to monitor, study, and revise the guidelines over time. Frank O. Bowman, III, *The Failure of the Federal Sentencing Guidelines: A Structural Analysis*, 105 Colum. L. Rev. 1315, 1324 (2005).[2]

However, in several areas of the guidelines, including sex offenses, Congress has stepped away from its reliance on the Sentencing Commission and "used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy . . . ." U.S. Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72–73 (November 2004). "In the [Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (PROTECT Act) of 2003], Congress, for the first time since the inception of the

---

[2] Guidelines generally are a good idea, but according to many observers, the federal guidelines have not worked out well in practice. *See, e.g.*, Frank O. Bowman, III, *The Failure of the Federal Sentencing Guidelines: A Structural Analysis*, 105 Colum. L. Rev. 1315 (2005).

guidelines, directly amended the *Guidelines Manual* and developed unique limitations on downward departures from the guidelines in sex cases." *Id.* While Congress's direct involvement in the guidelines is not inherently problematic, it is suspect when it lacks significant policy discussion and analysis. *See, e.g.*, *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1100 (N.D. Iowa 2009) (noting "the principal or only reason given by the Commission itself for each of the amendments [to the child pornography guidelines] is that the amendment was undertaken exclusively or primarily at the behest of Congress"); *see also* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (Jan. 1, 2009).

District courts are also now free to categorically disagree with the guidelines, at least in areas where they " 'do not exemplify the Commission's exercise of its characteristic institutional role.' " *Spears v. United States*, 555 U.S. 261, 264 (2009) (per curiam*)* (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)). An increasing number of district courts have exercised that discretion with respect to the child pornography guidelines. *See, e.g.*, *Beiermann*, 599 F. Supp. 2d at 1100 (N.D. Iowa 2009) (categorically rejecting U.S.S.G. § 2G2.2 on policy grounds and listing cases); *United States v. Price*, No. 09–CR–30107, 2012 WL 966971, at *11 (C.D. Ill. Mar. 21, 2012) (noting similar issues with U.S.S.G. §2G2.1 and departing downward at sentencing).

In this area, the guidelines routinely place defendants near or over the statutory-maximum sentence, eliminating any meaningful distinction between the least and most culpable offenders. This case is a great example. The guidelines called for Zauner to be sentenced to thirty years in prison and would have recommended a life sentence if they had not been constrained by the statutory-maximum punishment. *See* 18 U.S.C. § 2251(e). Yet looking at Zauner's offense conduct alone, she does not rank among the worst child pornography offenders deserving of the statutory-maximum sentence. She was a first-time offender and her conduct did not trigger

several of the possible enhancements under U.S.S.G. § 2G2.1. There is also nothing in the record to indicate the pictures were distributed beyond those people directly involved in the offense conduct. On the facts of this case, I do not believe any reasonable judge would have sentenced Zauner to the recommended sentence under the guidelines. The district court apparently agreed, exercising its prerogative to depart downward to sentence Zauner to eighteen years in prison—three years above the mandatory minimum. And where the guidelines are out of line and increasingly disregarded by sentencing judges, the mere fact of a downward departure should not insulate the district court's sentence from any type of meaningful review. In addition, in cases such as this, where the guidelines obviously do not fit, a sentencing judge should give careful assessment to the sentencing requirements of § 3553(a) and state the judge's reasons and conclusions on the record.

I also write separately because I personally believe the sentence was excessive. As the Supreme Court has highlighted several times: " 'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.' " *Pepper v. United States*, 131 S. Ct. 1229, 1239–40 (2011) (quoting *Koon v. United States,* 518 U.S. 81, 113 (1996)). And in a situation where the guidelines no longer provide any guidance, it is incumbent on the sentencing judge to provide a thorough discussion of the § 3553(a) factors and how they relate to the ultimate sentencing decision. Considering all of the facts of this case in light of the § 3553(a) factors, I do not believe any sentence over the mandatory minimum was warranted.

First, Zauner's troubled history and diminished mental capacity were not given sufficient weight by the district court. Her background and psychological issues were well documented by Dr. Ernest Boswell, the psychologist who interviewed Zauner in preparation of sentencing. The psychologist found Zauner exhibited a pattern of "general passivity in dealing with the world around her" and "[f]rom an early age she

has deferred decisions to others around her." He also found "a history of significant family dysfunction, early onset of alcohol use, rape and impaired intellectual abilities." Dr. Boswell also tested Zauner's intellectual function and she scored in the fourth percentile of overall cognitive ability—"[s]tated differently, 96% of adults have superior intellectual functioning to Ms. Zauner."

Zauner's background is especially important in light of Dr. Boswell's conclusions about Tafolla, who participated in the crime. While Dr. Boswell was not able to interview Tafolla, he had access to Tafolla's and Zauner's statements to law enforcement and other police reports from the investigation. Dr. Boswell found that "the psychological evidence suggests that Tafolla is a pathological individual who targeted, groomed and manipulated Ms. Zauner via a series of orchestrated statements and behaviors to engage in activities aimed at gratification of his aberrant and illegal sexual impulses" and that "Zauner was not the initiator or dominant individual in the sequence of events that resulted in the sexual exploitation of her daughters."

Generally speaking, the leader of a criminal act should be punished more severely than the followers. *See, e.g.*, U.S.S.G. § 3B1.1(a). In this case, Tafolla preyed upon Zauner, requesting the pornographic pictures of her children, and manipulating her into believing her actions were acceptable. As the prime actor in this offense, and the one with the "aberrant and illegal sexual impulses," I believe he should have received the stiffer sentence. Instead, his first victim, Zauner, got the heavier penalty. Tafolla was sentenced to 192 months (16 years) while Zauner received two years more. In cases where the guidelines realistically should not apply, as in this case, I suggest that the district court focus on the statutory requirements of § 3553(a) and particularly the admonition that district court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the statute. *See* 18 U.S.C.

§ 3553(a). This is a heavy sentence for a first time offender who was led into the offense by an unscrupulous predator. Fifteen years—the mandatory minimum—was more than sufficient.

———————————————