# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-3705

_____

United States of America

*Plaintiff - Appellee*

v.

Demetrius Hardiman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: August 22, 2014
Filed: August 27, 2014
[Unpublished]

_____

Before BENTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Demetrius Dre Hardiman pled guilty to disposing of a firearm to a felon, violating 18 U.S.C. § 922(d)(1). The district court[1] denied an adjustment for

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

acceptance of responsibility and gave him a within-Guidelines sentence. Hardiman appeals the denial of an adjustment and the reasonableness of the sentence. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

In his plea agreement, Hardiman agreed to the following facts:

At about 1:15 a.m. on May 8, 2013, officers from the Cedar Rapids Police Department encountered three individuals on 30th Street SE, Cedar Rapids, Iowa, including defendant and his brother Ramius Hardiman. When Ramius was asked what he had on his person, defendant said "it's mine." When the officer asked "what is yours," Ramius thrust out his hip disclosing a bulge in his waistband. The officer lifted Ramius' shirt disclosing a cocked and loaded Taurus PT99AF 9mm pistol . . . . Defendant later told officers that he stole the gun about one year earlier and that he gave the firearm to his brother Ramius earlier that night to carry for him. Defendant stated that they brought the gun along that night for protection.

Later, he did not contest the following facts in the presentence investigation report:

[D]efendant told the interviewing officer that "they would" walk around the neighborhood checking vehicles, and if the doors were not locked, they would enter the vehicle and steal items. During that same interview, the defendant claimed ownership of the firearm and stated that he had given the firearm to his brother, Ramius Hardiman, to hold onto for him while they were "scoping out cars" because his hand was in a cast at the time, making it difficult for him to carry the firearm. The defendant stated that he brought the firearm along in case they were confronted by a vehicle owner.

Hardiman knew his brother—on probation for involuntary manslaughter—could not possess a firearm. During allocution at his sentencing

-2-

hearing, Hardiman denied using the firearm for protection while stealing from cars. He said:

> I would like to say that during the time of where they're saying I was going to commit a crime, we were not going to search through cars. They asked me, you know, what my intentions were on leaving the house that night, and my intentions were to go search through cars. But before I even stepped out of the door, my brother and my friend came and approached me and—with another idea of going and hanging out with some girls, so that's what we were going to do. So I parked my car. I did not feel like leaving my gun in the car; I took my gun with me. . . . I handed my brother the gun so I could mess around with my friend. We were about to—I can't remember exactly what we were going to do, but that's what we were about to do when I handed it to my brother.

The district court interrupted the allocution, told Hardiman that his statement was "contrary to a statement that you already gave to the police," and allowed him to explain. He replied:

> What I told the police was what I just said. And I've tried to explain that to my lawyer, that that—you know, what they said in the report about what was going on that night, that that wasn't true. I tried to say that, but—(Whereupon, counsel conferred with the defendant).

The district court continued the hearing two weeks later. After hearing testimony, the court found Hardiman's statements untrue, denied an adjustment for acceptance of responsibility, and sentenced him to 41 months, the top of the Guidelines range. Hardiman believes that "the conduct discussed during [his] allocution did not pertain to any portion of the offense of conviction," so there was "no viable and legitimate basis to strip [him] of his acceptance of responsibility."

"A district court's factual determination about whether the defendant accepted responsibility is entitled to great deference, and [this court] will reverse it only if it

-3-

is so clearly erroneous as to be without foundation." *United States v. Walker*, 688 F.3d 416, 426 (8th Cir. 2012) (quoting *United States v. Smith*, 665 F.3d 951, 957 (8th Cir. 2011)). "[T]he burden is on a defendant to show that he clearly demonstrated acceptance of responsibility." *United States v. Vega*, 676 F.3d 708, 723 (8th Cir. 2012) (quoting *Smith*, 665 F.3d at 957). A guilty plea is "significant evidence" of acceptance, but "may be outweighed by conduct . . . that is inconsistent with such acceptance of responsibility." USSG §3E1.1, cmt. 3. "[A] defendant who falsely denies . . . relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." USSG §3E1.1, cmt. 1. Relevant conduct includes "specific offense characteristics." USSG §1B1.3(a). In the "Specific Offense Characteristics" section of his Guidelines calculation, Hardiman received four points for disposing of the firearm "in connection with" Third Degree Burglary. *See* USSG §2K2.1(b)(6)(B). At allocution, he flatly denied the burglary. The district court did not clearly err in denying an adjustment for acceptance of responsibility.

Hardiman argues that his allocution is supported by statements from police. In fact, these statements show that Hardiman lied. One officer testified that Hardiman told her "they were walking through the area looking for open cars." And, "if they were confronted by the owner of the vehicles, that they would use [the gun]." Another officer testified that Hardiman said they were "entering vehicles, and he had the firearm with him just to scare off the owner if the owner would come out and catch them inside the vehicle." The officer thought that Hardiman "actually entered vehicles."

Hardiman contends that his within-Guidelines sentence is unreasonable. This court reviews a sentence "for substantive reasonableness under an abuse-of-discretion standard, according a rebuttable presumption of a reasonableness to a sentence within the advisory range." *United States v. Struzik*, 572 F.3d 484, 487 (8th Cir. 2009). The district court was aware of Hardiman's age, characteristics, and criminal history. It

found that using a loaded firearm to help burglarize cars was a "serious offense," and imposed a sentence at the top of the Guidelines range. Hardiman fails to show that this was an abuse of discretion. *See United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) ("[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable.") (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

* * * * * * *

The judgment is affirmed.

_____